The CITY OF LANCASTER, Lancaster Police Officers Everett Powell and Jimmy Miller, and the City of DeSoto and DeSoto Police Officers William H. Ransom and C.P. Bentley, Petitioners,

v.

Ken CHAMBERS and Evelyn Chambers, Individually and as next friends of Bradley Chambers, Respondents.

No. D–3331.

Supreme Court of Texas.

Argued Oct. 14, 1993.

Decided June 15, 1994.

**652**

Eric W. Pinker, Robert G. Hogue, Randall R. Kucera, R. Wayne Gordon, Dallas, for petitioners.

Thomas J. Stutz, David R. Weiner, Dallas, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, C.J., and GONZALEZ, HIGHTOWER, HECHT, and GAMMAGE, Justices, and Justice ENOCH join.

Ken and Evelyn Chambers, individually and as next friends of their son, Bradley Chambers (collectively "Chambers"), sued the City of Lancaster, Lancaster police officers Everett Powell and Jimmy Miller, the City of DeSoto, and DeSoto police officers William H. Ransom and C.P. Bentley, for common law negligence and deprivation of rights under 42 U.S.C. § 1983 in connection with a high-speed police chase in which Bradley Chambers was seriously injured. Because the doctrine of official immunity, invoked by the police officers as an affirmative defense, continues to be an important and unsettled issue in our jurisprudence, we granted the cities' and the officers' application for writ of error. We granted Chambers' application for writ of error concerning his rights under section 1983 because it also raises important, potentially dispositive issues.

In the early morning hours of Sunday, August 3, 1986, Bradley Chambers was riding on the back of a motorcycle driven by Scott Stiles through the city of DeSoto. After Stiles allegedly ran a red light within view of DeSoto police officer Bentley, Bentley engaged the emergency lights of his squad car and pursued them. Stiles, with Chambers still on board, sped away and a high-speed chase began. Bentley was soon joined by several fellow DeSoto officers, including Ransom, who was monitoring the chase in a back up vehicle. The chase continued on to Interstate 35, where the DeSoto officers, after radioing for assistance, were joined by Powell and Miller of the Lancaster police department. Ultimately, ten police vehicles from five jurisdictions joined the chase. All of the vehicles had their sirens and emergency lights on. Chambers testified that at one point during the chase, which exceeded speeds of 80–100 miles per hour, the police closed to within 5–10 feet, although there was testimony from some of the officers that Stiles continued to pull away from the pursuit. When Stiles ultimately attempted an exit from the interstate, careening down the exit ramp at a high rate of speed, the motorcycle crashed into a sign pole at a gas station, killing Stiles and seriously injuring Chambers.

Chambers' parents, individually and as next friends for their son, brought suit against the DeSoto and Lancaster policemen and against the respective cities alleging causes of action for (1) negligence, and (2) violation of Chambers' civil rights through the use of "excessive and deadly force" under 42 U.S.C. § 1983. The officers and cities (collectively "defendants") filed motions for summary judgment asserting, among other things, that (1) they were not negligent as a matter of law because (a) they owed no duty to Chambers, and (b) their actions were not a proximate cause of the accident; (2) they were immune from suit under these facts; and (3) Chambers failed to state a cause of action under § 1983.[1] The trial court granted summary judgment on both of Chambers' claims, and rendered a take-nothing judgment.

---

1. All references to § 1983 are to 42 U.S.C. § 1983.

The court of appeals reversed the trial court's judgment and remanded the negligence claims, 843 S.W.2d 143, 151, but affirmed the summary judgment on the § 1983 claims. *Id.* at 152.

We remand the negligence and state law immunity issues to the trial court for further proceedings consistent with this opinion, and affirm the summary judgment disposing of Chambers' § 1983 claim, but not on the grounds relied upon by the court of appeals.

## I.

### Negligence

The defendants contend that they were not negligent as a matter of law because they owed no duty to Chambers and their actions were not the proximate cause of the accident. As to the duty argument, TEX. REV.CIV.STAT. art. 6701d, § 24(e) (Vernon 1977) provides that authorized drivers of emergency vehicles have "the duty to drive with due regard for the safety of *all persons*." (emphasis added). The scope of that duty encompasses Chambers. As to the proximate causation argument, we agree with the court of appeals when it explained that:

The same argument was made in *Travis,* and the supreme court under those facts held that the police could be a proximate cause of the accident in that case. We believe that the same reasoning applies to these facts. As the *Travis* court noted, proximate cause requires two elements: (1) cause in fact, and (2) foreseeability. "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury and that, without it, no harm would have occurred. As in *Travis,* the summary judgment proof raises the inference that the motorcycle's wreck may have been caused in part by the policemen's failure to drive with due regard for Chambers' safety.... While the criminal conduct of a third party can be a superseding cause rendering the resulting injuries unforeseeable to the actor, the criminal conduct is not a superseding cause if it is a foreseeable result of the actor's negligence. Here, the [defendants'] summary judgment proof does not conclusively

prove that the illegal conduct which caused the accident—Stiles' high-speed exit from the highway with the resulting loss of control of his motorcycle—was an unforeseeable result of their negligence, *i.e.,* their failure to drive with due regard for the safety of all persons using the road. A fact question remains as to whether the [defendants] were a proximate cause of the accident.

843 S.W.2d at 148 (citations omitted). Based on this record, the defendants are not entitled to summary judgment on the basis that they were not negligent as a matter of law.

## II.

### Official Immunity for State Law Claims

Official immunity is an affirmative defense. *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Thus, the burden is on the defendant to establish all elements of the defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.).

### A.

### Discretionary v. Ministerial Acts

The court of appeals held that because the officers did not have discretion to drive their vehicles without due regard for the safety of others, their actions could not be protected by official immunity. 843 S.W.2d at 149. We disagree; the court's focus should be on whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act while discharging that function. If official immunity existed only in the cramped sense used by the court of appeals, its qualified promise against personal civil liability to public officers would be hollow indeed. The purpose of the doctrine

of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable.

Ministerial acts are those:

[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Rains v. Simpson,* 50 Tex. 495, 501 (1878) (quoting *Commissioner of the General Land Office v. Smith,* 5 Tex. 471, 479 (1849)). If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial. *Wyse,* 733 S.W.2d at 227.

Whether a police officer operating a vehicle in the scope of the officer's authority is performing a discretionary or ministerial act is an issue on which Texas courts have reached divergent conclusions. *Compare Eubanks v. Wood,* 304 S.W.2d 567, 570 (Tex. Civ.App.—Eastland 1957, writ ref'd n.r.e.) (holding that an officer's response to an emergency call "does not involve matters within his discretion as an officer") *and Huddleston v. Maurry,* 841 S.W.2d 24, 29 (Tex. App.—Dallas 1992, writ dism'd w.o.j.) (explaining that officers were not entitled to immunity because "their actions in the pursuit did not involve matters within their discretion") *with Travis v. City of Mesquite,* 830 S.W.2d 94, 103 (Tex.1992) (Cornyn, J., concurring) (arguing that officers' decision to pursue at high speed was "an exercise of discretion") *and Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied) (noting, without discussion, that county constable was protected by immunity when he stopped a vehicle whose taillights were not operating) *and Edgar v. Plummer,* 845 S.W.2d 452, 454 (Tex.App.—Texarkana 1993, no writ) ("The enforcement of traffic regulations by peace officers involves the exercise of their discretion.").

In other contexts, our courts have held that police officers are exercising discretion while performing their duties. *See, e.g., Dent v. City of Dallas,* 729 S.W.2d 114, 117 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (holding officer was performing discretionary act in deciding when and how to arrest suspect), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *Vasquez v. Hernandez,* 844 S.W.2d 802, 804–05 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.) (holding that officer's positioning himself next to his patrol car with gun drawn and then firing was a discretionary use of deadly force); *Wyse,* 733 S.W.2d at 227 (describing investigatory duties of peace officers as discretionary); *Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex.App.—Houston [1st Dist.] 1993, no writ) ("When a police officer reports the misconduct of another ... the officer performs a discretionary act.").

Although federal law does not determine whether an officer's actions are discretionary for purposes of state law,[2] nonetheless an examination of federal immunity law is instructive. Under federal law, the act in question must be discretionary as a prerequisite to an extension of qualified immunity. *See Streetman v. Jordan,* 918 F.2d 555, 556 (5th Cir.1990) ("Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well-established law."). Thus, those cases in which a federal court extends immunity to a police officer, necessarily determine that the disputed actions are discretionary. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) (holding officers engaged in search entitled to immunity); *Swint v. City of Wadley,* 5 F.3d 1435 (11th Cir.1993) (holding officers involved in investigatory raid entitled to immunity); *Horta,* 4 F.3d at 15 (holding offi-

---

**2.** *See Horta v. Sullivan,* 4 F.3d 2, 15 (1st Cir. 1993) ("[T]he district court erred in reasoning that because the police officers' actions were 'discretionary' for the purposes of qualified immunity under federal law, they were also performing 'discretionary functions' for the purposes of [immunity under state law]."); *Greiner v. City of Champlin,* 816 F.Supp. 528, 545 (D.Minn 1993) ("The federal doctrine of qualified immunity does not apply to claims brought under [state] law.").

cers involved in pursuit and roadblock entitled to immunity).

Several states that have recently considered the issue have also held that the actions of a police officer during a high-speed chase are discretionary. *See, e.g., Pletan v. Gaines,* 494 N.W.2d 38 (Minn.1992) (holding that police officers who engaged in a dangerous high-speed chase of a fleeing suspect were immune from suit); *Youngblood v. Clepper,* 856 S.W.2d 405, 408 (Tenn.Ct.App. 1993) ("In one sense, much of a police officer's conduct involved [sic] discretion. An officer must continuously choose between warnings and arrests. He must decide whether a minor problem should be passed up in order to concentrate on a more serious one. He must decide which vehicles to signal and what form of signal to give. Discretion is a constant factor in a police officer's day.") (quoting *Simon v. Heald,* 359 A.2d 666, 668 (Del.Super.Ct.1976)); *Bachmann v. Welby,* 860 S.W.2d 31, 34 (Mo.App.1993) (holding that officer's decision regarding route and speed to travel in responding to all-points bulletin was discretionary).[3]

Chambers contends that a Texas statute[4] addressing the level of care owed by an operator of an emergency vehicle, mandates a holding that an officer has no discretion to drive without due regard for the safety of all persons. This formulation of the issue adopted by the court of appeals, however, begs the question of whether the officer is performing a discretionary function. The statutes at issue are not sufficiently specific so as to leave no choice to an officer in the performance of these duties. Chambers' argument, that an officer is without discretion to drive in a manner which violates these statutorily-imposed standards of care, inexorably leads to the conclusion that an officer is not entitled to immunity if the officer is negligent. That formulation of the standard frustrates official immunity's very function. If public officials perform their duties without negligence, they do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently. *See Chapman v. Gonzales,* 824 S.W.2d 685, 687–88 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Vasquez,* 844 S.W.2d at 804 ("[Q]uestions of the officer's individual negligence ... are immaterial when deciding whether the officer was performing discretionary functions.") (citing *Carpenter,* 797 S.W.2d at 101).

■ The decision to pursue a particular suspect will fundamentally involve the officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit. Beyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a number of levels, including, which route should be followed, at what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued. We hold that these police officer's engaging in a high-speed chase was a discretionary act.

### B.

### Good Faith

■ The difficulty in applying the "good faith" element of official immunity has been previously acknowledged. *Travis,* 830

---

3. While some jurisdictions have held that a high-speed chase does not involve an officer's discretion, *see Tice v. Cramer,* 133 N.J. 347, 627 A.2d 1090, 1100–01 (1993) (noting that discretionary immunity is limited to discretion exercised at highest levels of government in matters of policy or planning and is not applicable in pursuit case); *City of Pinellas Park v. Brown,* 604 So.2d 1222, 1226 (Fla.1992) (holding that immunity did not shield officers involved in 25–mile high-speed chase of traffic violator because decisions by officers to continue the chase were operational rather than discretionary acts), the officers involved usually have had their discretion significantly curtailed by specific guidelines regulating

their conduct in the chase. Although in *Travis* reference was made to the pursuit guidelines of the City of Mesquite, 830 S.W.2d at 103 (Cornyn, J., concurring), Chambers does not argue in this case that the specific pursuit guidelines of any of the municipalities involved affects our inquiry into whether actions in pursuit are discretionary or ministerial. In fact, Chambers concedes in his brief to the court of appeals that "a police officer has the discretion to decide whether to initiate or continue a chase."

4. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 24(c)(3) (Vernon 1977).

S.W.2d at 104–05 (Cornyn, J., concurring). Today we adopt the following test, which we believe achieves a fair balance between the competing interests at stake. We hold that an officer acts in good faith in a pursuit case if:

> a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.[5]

This test is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in § 1983 cases:

> Although the cases sometimes refer to the doctrine of qualified "good faith" immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

*Swint v. City of Wadley,* 5 F.3d 1435, 1441–42 (11th Cir.1993) (quoting *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992), and *Cour-* *son v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)), respectively) (citations omitted).

The defendants argue that this test for good faith is too easily controverted, making summary judgment on official immunity claims difficult to obtain.[6] To the contrary, our good faith test sets an elevated standard of proof for the nonmovant seeking to defeat a claim of official immunity in response to a motion for summary judgment, while reasonably accommodating the competing interests involved. On one hand, there is

> (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; [and] (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

*Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). On the other hand, the court must consider the rights of bystanders or other innocent parties if an officer acts in gross disregard of public safety.

The "could have believed" aspect of the good faith test means that in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer

---

**5.** Despite similarity between this standard and a general negligence test, no equivalence should be implied. While art. 6701d provides the test for whether an emergency vehicle operator is guilty of ordinary or gross negligence, it does not determine *whether* immunity should be extended. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d, § 24(e) (Vernon 1977) (stating that the article's provisions as to duty do not relate to consequences of breach of such duty: "nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others"). That art. 6701d may be read to inferentially rebut the defense of official immunity for operators of emergency vehicles in some instances, by collapsing the duty and good faith inquiries, is a consequence of the legislature's framing of the statutory duty. But in the absence of an expression of clear legislative intent to abolish official immunity altogether in this context, we hold that a violation of art. 6701d does not preclude application of the official immunity doctrine to negligent emergency vehicle operators.

**6.** The defendants suggest the following test: an officer acts in good faith if: (1) the officer continued the pursuit in the course and scope of police work, (2) the pursuit and continuance of the pursuit were prompted by an observed violation of the law or investigative information regarding the need to apprehend the suspect, and (3) the officers' vehicles did not, by proximity to or "coercion" of the fleeing suspect's vehicle, maneuver the suspect's vehicle into the crash. While we concede that this test could almost always be resolved on summary judgment, there are numerous other problems with this formulation of the issue: the first element collapses the good faith requirement for immunity into the acting-within-the-scope-of-authority requirement; the test's first and second elements are redundant—whenever (2) is true, (1) will necessarily also be true; as to (3), whether an officer causes a suspect's vehicle to crash cannot be dispositive of the issue of whether the officer acted in good faith.

might have believed that the pursuit should have been continued.[7] It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit. To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993). *Cf. Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1234–35 (11th Cir. 1992); *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (noting that "if officers of reasonable competence could disagree on this issue, immunity should be recognized").[8]

Even federal immunity law does not guarantee resolution of the immunity issue at summary judgment. *See, e.g., Presley v. City of Benbrook*, 4 F.3d 405, 410 & n. 5 (5th Cir.1993) ("Immunity's shield against suit is lost, of course, when police officer defendants go to trial. At that point, if—and this is a big if—there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.... The Fifth Circuit pattern jury charge exemplifies how a jury would determine qualified immunity in excessive force and certain fourth amendment cases."); *Mazurkiewicz v. New York City Transit Auth.*, 810 F.Supp. 563, 568 (S.D.N.Y.1993) ("The question of excessive force is one for the jury in a civil rights action such as this one."); *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir.1993) ("However, if genuine issues of material fact exist as to whether the defendants actually did commit acts that would violate a clearly established right, then summary

judgment on qualified immunity is improper.").

We do concede that the test we create today is somewhat less likely to be resolved at the summary judgment stage than is the federal test. There are both substantive and procedural reasons for this.

First, federal immunity may be conferred at the summary judgment stage by the court's finding that the constitutional right at issue was not clearly established. *Elder v. Holloway*, —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (categorizing the inquiry as a question of law in which the court determines whether the right was clearly established); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred."); *Rodriguez v. Tisch*, 688 F.Supp. 1530, 1532 (S.D.Fla.1988) ("Because plaintiffs' claims do not state a violation of clearly established law, summary judgment is appropriate at this time."). No analogous threshold legal question has been written into a good faith test for immunity from nonconstitutional torts.

Second, the relative ease of obtaining summary judgment in the federal system as compared to Texas' system permits federal immunity issues to be resolved more frequently at summary judgment. *See generally* David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 35 S.TEX.L.REV. 9, 78–94 (1994) (contrasting federal with Texas summary judgment practice).

Given our articulation of a new legal standard by which good faith as a component of official immunity must be judged, we remand this cause to the trial court for further proceedings consistent with this opinion.

---

7. This standard is analogous to the abuse of discretion standard of review utilized by an appellate court when reviewing certain trial court rulings: an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question. *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970).

8. Citation to federal authority is appropriate because these holdings flow not from the more liberal summary judgment rules in the federal courts, but rather from the appropriate meaning of an objective reasonableness requirement in an immunity analysis.

## C.

### Scope of Authority

■ Finally, officials must be acting within the scope of their authority in order for a court to find them immune from suit. The court of appeals implies that the officers were not acting within the scope of their authority because they are without authority to drive without due regard for the safety of others. 843 S.W.2d at 149 (noting that fact issues as to whether the officers had acted negligently created "a genuine issue of material fact as to whether the officers were acting within their authority"). The court of appeals misconceives the scope of authority element of official immunity, however, and essentially repeats the officers-are-without-discretion-to-drive-without-due-regard argument disposed of above.[9] An official acts within the scope of her authority if she is discharging the duties generally assigned to her. Here, we hold that the defendant officers were acting within the scope of their authority: each officer was on duty, in a squad car, pursuing a suspect.

## D.

### Immunity of Cities

■ A municipality, as a political subdivision of the state, is not liable for the acts or conduct of its officers or employees unless the municipality's common law immunity is waived by the Texas Tort Claims Act ("TTCA"). *Cronen v. Nix*, 611 S.W.2d 651 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 112 (1981). The applicable waiver provision of the TTCA provides, in pertinent part:

A governmental unit in the state is liable for:

1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; *and*

B) *the employee would be personally liable to the claimant according to Texas law*....

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (emphasis added). If the officers are immune from suit, they are not "personally liable to the claimant according to Texas law." As we are remanding the issue of the officers' liability to the trial court for further proceedings under the new test for good faith that we have articulated today, the issue of the cities' liability is also remanded to the trial court.

## III.

### The § 1983 Claim

■ Section 1983 does not create any substantive rights but is merely "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694–95 n. 3, 61 L.Ed.2d 433 (1979)). Chambers alleges in his first amended original petition that the officers used excessive force, which deprived Chambers "of his liberty without due process of law in violation of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution."

### A.

#### *Graham* and § 1983

#### Excessive Force Claims

■ When deciding issues of federal law, we find ourselves in the unique role—as a court of last resort on all other issues within our jurisdiction—of an intermediate appellate

---

**9.** In *Anderson*, the Court rejected this very argument when it rejected the notion that an officer necessarily operates outside of the scope of the officer's authority when acting unlawfully. *Anderson*, 483 U.S. at 644–45, 107 S.Ct. at 3041–42 (noting that defining scope of authority in this manner "would introduce into qualified immunity analysis a complexity rivaling that which we found sufficiently daunting to deter us from tailoring the doctrine to the nature of officials' duties or of the rights allegedly violated").

court, anticipating the manner in which the United States Supreme Court would decide the issue presented.

As the court of appeals pointed out, after the parties had filed their motions for summary judgment but before the trial court ruled on the motions, the Supreme Court decided *Graham v. Connor*, in which it held that:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Graham*, 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in original). After determining that Chambers' "petition [alleged] only due-process violations and [failed] to seek relief under the Fourth Amendment," 843 S.W.2d at 151, the court of appeals found that Chambers failed to state a cause of action under § 1983. The court of appeals decided that giving Chambers an opportunity to amend his pleadings would be pointless because:

> If ... the petition affirmatively demonstrates that no cause of action exists or that the plaintiff's recovery is barred, then summary judgment is proper. Under these facts, the only arguable claim for constitutional deprivation that [Chambers] could raise was that of the use of excessive force by the officers thereby violating Chambers' Fourth Amendment right to freedom from unreasonable searches and seizures. If, as a matter of law, under the facts of this case, either no seizure occurred or the force used by the officers was reasonable, then no Fourth Amendment violation occurred.

843 S.W.2d at 151 (citations omitted). The court of appeals concluded that "even if the officers were negligent ... they did not *seize* Chambers with either reasonable or excessive force.... Because [Chambers'] petition affirmatively demonstrates that no cause of action exists for deprivation of civil rights, the trial court did not err in granting ... summary judgment as to these claims." *Id.* at 152 (emphasis added).

■ The question presented is whether all excessive force claims must be alleged as Fourth Amendment violations, even if no seizure occurred, or whether Chambers has stated a cognizable claim by alleging that excessive force, which does not constitute a seizure, violates substantive due process?

*Graham* itself limits its application to a seizure. *See Graham*, 490 U.S. at 395, 109 S.Ct. at 1871 (limiting holding to "the course of an arrest, investigatory stop, or *other* 'seizure'") (emphasis added). The Court criticized the "indiscriminate" tendency of lower courts to use the standards applicable to substantive due process claims "without considering whether the particular application of force might implicate a more specific constitutional right governed by a different standard." 490 U.S. at 393, 109 S.Ct. at 1870. If "the particular application of force [does not] implicate a more specific constitutional right governed by a different standard," nothing in *Graham* implies that a substantive due process claim would not remain viable.[10] Further, it is illogical to suggest that a party can only bring an excessive force claim arising from a seizure as a Fourth Amendment violation, yet also hold that the party had failed to state a claim for relief because no seizure occurred under the particular facts. Without more explicit language from the Court, we are unwilling to bar all excessive force claims arising out of conduct not constituting a sei-

10. In criticizing the tendency of the lower courts to review excessive force claims solely under a substantive due process standard, the Court explained that it rejected "this notion that all excessive force claims brought under § 1983 are governed by a single generic standard." *Graham*, 490 U.S. at 393, 109 S.Ct. at 1870. Implicitly, then, *Graham* holds that no single standard (be it a substantive due process or Fourth Amendment standard) applies to all excessive force claims.

Finally, the Court noted that only "[i]n *most* instances" will the Fourth or Eighth Amendment be the appropriate source of the constitutional right infringed in an excessive force case. *Id.* at 394, 109 S.Ct. at 1871 (emphasis added). While we do not intend to split hairs, "most" does not mean all, and it seems clear, as numerous federal courts have also concluded since *Graham*, that the Court left room for a substantive due process excessive force claim.

zure.[11]  Accordingly, we reverse the judgment of the court of appeals on this issue and hold that a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives *Graham.*[12]  The court of appeals erred in upholding summary judgment on the grounds that Chambers' substantive due process excessive force claim was barred.

## B.

### Federal Substantive Due Process

The federal doctrine of substantive due process as it applies to excessive force claims

11.  We construe recent comments by the Court as consistent with our interpretation of *Graham*. *See Albright v. Oliver*, — U.S. —, —, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (noting that *Graham* only bars substantive due process claims when a particular amendment provides an explicit textual source of constitutional protection).

12.  A number of federal courts have interpreted *Graham* in this manner. *See, e.g., Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1409 n. 13 (9th Cir.1989) (Kozinski, J.) (applying substantive due process test and holding that *Graham* only dictated use of the fourth amendment test when "the plaintiff alleges governmental abuse not covered by another constitutional standard"), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990); *Pleasant v. Zamieski*, 895 F.2d 272, 276 n. 2 (6th Cir.) (holding in a deadly force case that "[d]espite the broad phrasing [of *Graham* ], presumably this imperative would preserve fourteenth amendment substantive due process analysis for those instances in which a free citizen is denied his or her constitutional right ... through means other than a law enforcement official's arrest, investigatory stop or other seizure"), *cert. denied*, 498 U.S. 851, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990); *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir.1990) ("We assume that claims of excessive force outside the context of a seizure still may be analyzed under substantive due process principles."); *Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir.1993) ("The First, Sixth and Ninth Circuits have held that this type of Fourteenth Amendment claim survives *Graham....* We are persuaded by the reasoning of our sister circuits. As such, we hold that a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives *Graham.*"); *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.1991) (proceeding through a substantive due process analysis on an excessive force claim without even mentioning *Graham* ), *cert. denied*, — U.S. —, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992); *Frye v. Town of Akron*, 759 F.Supp. 1320, 1323–24 (N.D.Ind.1991) ("After carefully

originated in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).  In that case, the Court voided a state criminal conviction based on evidence obtained by pumping the defendant's stomach.  The *Rochin* court held that substantive due process rendered "conduct that shocks the conscience" unconstitutional under the Due Process Clause of the Fourteenth Amendment.[13] Thirty-seven years later, in *Graham*, Chief Justice Rehnquist traced the evolution of substantive due process as applied to excessive force claims in the following words:

> If a police officer's use of force which "shocks the conscience" could justify set-

reading *Graham*, this court concludes that defendants have read [*Graham* ] too broadly.  The Supreme Court in *Graham* did not hold that all prearrest excessive force claims are to be analyzed exclusively under the Fourth Amendment....  As the plaintiffs [sic] claim is not encompassed by some other enumerated right, plaintiffs' allegations are sufficient to state a substantive due process claim under the Fourteenth Amendment.").

Further, those cases which hold that excessive force claims by pretrial detainees, to whom the Eighth Amendment does not apply, are to be analyzed under substantive due process, are consistent with the idea that *Graham* only requires a Fourth Amendment claim when that is the constitutional right truly implicated. *See Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C.Cir.1991) (holding that pretrial detainees can bring substantive due process claim); *Fields v. City of South Houston*, 922 F.2d 1183, 1191 (5th Cir. 1991) (same); *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir.) (finding that the "concept of 'seizure' in the Fourth Amendment is not so capacious or elastic as to cover pretrial detention three weeks after the initial arrest"), *cert. denied*, — U.S. —, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993).

13.  This admittedly vague standard was somewhat clarified in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

> The standard gains added content from other language in the [*Rochin* ] opinion.  The acts must do more than "offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically;" they must be such as "to offend even hardened sensibilities," 342 U.S. at 172, 72 S.Ct. at 210, or constitute force that is "brutal" and "offensive to human dignity."  342 U.S. at 174, 72 S.Ct. at 210.

*Johnson*, 481 F.2d at 1033 n. 6 (parallel citations omitted).

ting aside a criminal conviction, Judge Friendly reasoned [in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973) ], a correctional officer's use of similarly excessive force must give rise to a due process violation actionable under § 1983. Judge Friendly went on to set forth four factors to guide courts in determining "whether the constitutional line has been crossed" by a particular use of force—the same four factors relied upon by the courts below in this case.[14]

*Graham,* 490 U.S. at 393, 109 S.Ct. at 1870. (citation omitted).

As this standard developed, in *Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), the Court held that such a deprivation must flow from conduct "amounting to more than mere negligence." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 719 (4th Cir.1991) (citing *Daniels,* 474 U.S. at 334 n. 3, 106 S.Ct. at 666–67 n. 3). But more recently, the federal courts have eschewed Judge Friendly's "four factors" in favor of a variety of standards depending on the type of conduct involved. *See, e.g., Temkin,* 945 F.2d at 722 ("As all of the parties, and the district court as well, point out, our sister circuits have adopted standards of care ranging from 'gross negligence' to 'deliberate indifference' to 'recklessness' for section 1983 substantive due process claims involving conduct other than the driving of official vehicles."); *Landol–Rivera,* 906 F.2d at 796 (applying a reckless or callous indifference standard in analyzing officer's decision to shoot); *Morales v. Department of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (applying deliberate indifference standard to inmate's allegations that officer failed to intervene and stop fight between inmates). Our review of the relevant cases leads us to the conclusion that in the context of alleged police driving misconduct, the federal circuit courts have settled on the "shocks the conscience" standard for alleged deprivations of substantive due process rights. *See Temkin,* 945 F.2d at 721 ("A

review of rulings by other circuits which have examined the substantive due process issue in the context of police driving misconduct only leaves us further convinced of the correctness of the 'shocks the conscience' standard.").

We conclude that the defendant officers did not violate Chambers' substantive due process rights under the "shocks the conscience" test. In *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986), for example, the court explained in a police chase case in which the officer never engaged his siren or lights that:

> a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right.

*Id.* at 950 (citing to *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (arguing that to hold otherwise would render the Fourteenth Amendment a "font of tort law to be superimposed upon whatever systems may already be administered by the States")). In this case, the officers were involved in a high-speed pursuit (with their lights and sirens engaged) after either witnessing a violation of the law or having been called in to assist in the pursuit. None of these actions are so "brutal" and "offensive to human dignity" that the conduct involved shocks the conscience. Thus, summary judgment against Chambers on his § 1983 claim is warranted.

For these reasons, we affirm the judgment of the court of appeals disposing of Chambers' § 1983 claim, but on a different ground. We reverse the judgment of the court of appeals on the state law immunity issue and remand the case to the trial court for further proceedings consistent with this opinion.

DOGGETT, J., notes his dissent.

---

14. Judge Friendly explained that:

a court must look to such factors as [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson,* 481 F.2d at 1033.

SPECTOR, J., not sitting.

ENOCH, Justice, concurring.

When a criminal suspect makes the intentional decision to take whatever steps are necessary to avoid capture by law enforcement officers, the officers' decision to give chase cannot be a proximate cause of injuries resulting from the reckless behavior of the suspect. It is a tragedy that Bradley Chambers was a passenger on the motorcycle driven by Scott Stiles, who intentionally chose to avoid capture by driving at speeds approaching 100 miles per hour and executing the extremely risky maneuver of exiting a highway without slowing down. My view, though, is that the decision of the police to give chase is no legal cause for Scott Stiles to drive recklessly, irresponsibly. See *Travis v. City of Mesquite*, 764 S.W.2d 576 (Tex. App.—Dallas 1989) *rev'd*, 830 S.W.2d 94 (Tex.1992). However, this issue was resolved to the contrary by this Court in *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex. 1992). Because it is important that the parameters of police officer liability in cases such as this be settled, I concur in the Court's conclusion that there is a fact issue on proximate cause as dictated by *Travis*, but I remain with my views on the matter.[1]

The court of appeals in *Travis* affirmed summary judgment for the officers based on lack of proximate cause and, therefore, did not reach the official immunity question. I agree with this Court's disposition of this issue.

---

1. As Justice Brandeis stated, "In most matters it is more important that the applicable rule of law be settled than that it be settled right. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation." *Burnet v. Coronado Oil &* *Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). The legislature may very well do more to protect police officers from personal liability for a criminal suspect's reckless acts.