Trimble v. Robinson 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00707-CV







Terry Trimble, Tom Phillips, Judy Rouse, Barry W. Fredrickson,


and Claudia Langguth, Appellants



v.



John L. Robinson, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 92-01046, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 Appellee John L. Robinson sued his employer, the Texas Department of Human
Services, and individually his supervisors, Terry Trimble, Tom Phillips, Judy Rouse, Barry
Fredrickson, and Claudia Langguth (collectively "Supervisors") for damages allegedly stemming
from job discrimination on the basis of his age (fifty-four) and disability (dyslexia), and as
retaliation for having filed official complaints, all in violation of the Texas Commission on Human
Rights Act. See Commission on Human Rights Act, 68th Leg., 1st C.S., ch. 7, § 5.01, 1983
Tex. Gen. Laws 37, 45 (Tex. Rev. Civ. Stat. Ann. art. 5221k, § 5.01, since repealed and codified
in Tex. Lab. Code Ann. § 21.051 (West Pamph. 1996)). (1) In a single point of error, Supervisors
appeal the trial court's interlocutory order denying their motion for summary judgment based on
the affirmative defense of official immunity. (2) See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(5) (West Supp. 1996). We will affirm the trial court's order.


FACTUAL AND PROCEDURAL BACKGROUND


 In 1986 Robinson had been an employee of the Texas Department of Human
Services ("the Department") for twenty-two years and was at a compensation level of pay group
21, step 8. In November 1986 the Department undertook a reduction in force ("RIF"). Robinson
was removed from his position in the Office of Field Management in favor of a younger individual
whom he felt to be less qualified. Claiming that his removal resulted from discrimination and
retaliation by his superiors, Robinson filed an informal complaint of discrimination with the
Department's Director of Civil Rights.

 In January 1987 Robinson's compensation was downgraded to pay group 20, step
8. In June 1988, when his level 20 job was scheduled to expire, he was given a different level
20 job. 

 Robinson was advised in February 1990 that his then-current job was being
eliminated because of an October 1989 RIF. He was placed in a temporary-status job and signed
an agreement for continued employment which allowed him to remain in his position until eligible
for retirement two years later, at which time he would be required to retire. The agreement
provided, however, that if Robinson could secure a permanent job within two years, he would not
be forced to retire. In March 1990 Robinson's compensation was again downgraded, this time
to pay group 18, step 8. During 1990 and 1991, Robinson applied for more than forty permanent
jobs, but was denied all of them, allegedly in favor of less qualified persons.

 In January 1991 Robinson formally requested an adequate computer as
accommodation for his learning disability in jobs that required him to write reports. The
Department's managers agreed that Robinson needed the assistance of a computer, but he did not
receive one and continued to make verbal requests that were refused or ignored. Subsequently,
Robinson's work assignment was changed to one which required even more report-writing. In
August 1991 Robinson filed a complaint with the Texas Commission on Human Rights concerning
his lack of an adequate computer.

 In November his temporary position was made permanent. Nonetheless, in January
1992, while still working for the Department, Robinson sued Supervisors and the Department for
discrimination and for alleged retaliatory acts against him for filing discrimination complaints. 
He claimed damages for intentional infliction of emotional distress.

 The Department ordered new computers in August 1993 for everyone in Robinson's
work unit except Robinson. Robinson voluntarily retired one month later. In his deposition,
Robinson stated that, although his job had been made permanent, he felt forced to leave because
of the frustration of working in a job that was very difficult for him because of his lack of an
adequate computer.

 All six original defendants moved for summary judgment on multiple grounds. The
trial court denied this motion, whereupon the defendants filed a supplemental motion for summary
judgment, based mainly on the official immunity defense. Again, the summary judgment was
denied. Supervisors now appeal from this second denial, asserting in their single point of error
that the trial court erred in failing to grant the summary judgment based on their official immunity
as employees of the state.

 DISCUSSION


 The standards for reviewing a motion for summary judgment are well established: 
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding judgment, evidence favorable to the nonmovant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in his favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 The purpose of official immunity is to insulate the functioning of government from
the harassment of litigation, thereby increasing the efficiency of employees by sparing them the
cost of defending frivolous litigation. Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994). However,
this defense is not meant to protect erring officials. Id. Government employees are entitled to
official immunity only from suits arising from the performance of their (1) discretionary duties,
(2) in good faith, (3) while acting within the scope of their authority. City of Lancaster v.
Chambers, 883 S.W.2d 650, 653 (Tex. 1994). Because official immunity is an affirmative
defense, summary judgment is proper only if the movants establish conclusively each element of
the defense. Kassen, 887 S.W.2d at 8. 

 As to the first element of this defense, City of Lancaster instructs us that a
discretionary action is one which involves personal deliberation, decision, and judgment. 883
S.W.2d at 654. Actions which require obedience to orders or the performance of a duty to which
the actor has no choice, are ministerial. Id. To demonstrate the third element of official
immunity, scope of authority, an administrator must prove that he is discharging the duties
generally assigned to him. Id. at 658. As the record appears before us, Supervisors presented
insufficient information to prove either of these two elements conclusively. Nonetheless, the
primary dispute between the parties seems to be over the second element, good faith. Even
assuming arguendo that the "discretionary action" and "scope of authority" elements have been
met, Supervisors still have not met their burden of presenting conclusive proof of good faith, for
the following reasons.

 The good faith element of the official immunity defense is an objective standard:



[T]he test is one of objective legal reasonableness, without regard to whether the
government official involved acted with subjective good faith. "[W]e look to
whether a reasonable official could have believed his or her conduct to be lawful
in light of clearly established law and the information possessed by the official at
the time the conduct occurred." Thus, qualified immunity protects "all but the
plainly incompetent or those who knowingly violate the law."



Id. at 656 (quoting Swint v. City of Wadley, 5 F.3d 1435, 1441-42 (11th Cir. 1993)). This test
focuses on what the government official could have believed about the lawfulness of his conduct,
and not any subjective, intended results of that conduct. To be entitled to summary judgment,
therefore, a defendant must prove conclusively that a reasonably prudent administrator might have
believed that the actions taken were appropriate. Id. at 656-57. A defendant need not show that
it would have been unreasonable to take actions other than those taken. Id. at 657. If
administrators of reasonable competence could disagree on the issue, immunity should be
recognized. Id.

 In the present case, Robinson's allegations against each of the defendants are
somewhat vague. For example, Robinson alleges that after he asked Claudia Langguth to make
his then-temporary job permanent, she said that she would "look into it" and then never got back
in touch with him. Robinson was "personally sure" that appellant Trimble made the decision to
eliminate Robinson's job through one of the RIFs. Robinson claims that appellant Rouse caused
him emotional distress by refusing an offer of funding that would allow the project on which
Robinson was working to continue. Tom Phillips is said to have refused Robinson's repeated
requests to make his temporary job permanent without going through the "selection and
promotion" process when Robinson knew from personal experience in the commissioner's office
that it was normal procedure for people to transfer jobs without going through this process. 
Furthermore, after Robinson filed a complaint with the Civil Rights Division of the Department,
Robinson alleges that Phillips told him that he (Robinson) "would eventually be sorry that [he]
had complained." Finally, Robinson complains that appellant Barry Fredrickson did not plan to
tell Robinson about Judy Rouse's refusals of a funding offer. Robinson also found a note from
Fredrickson to Rouse saying that the reason the funding offer was refused was that Rouse and
Fredrickson did not want the project if Robinson was to accompany it. Two days after Robinson
spoke to the Director of Civil Rights about this, Fredrickson moved Robinson's staff and took
away Robinson's computer, saying, "I'm discriminating against you, because you complained to
Civil Rights, and you can't do anything about it, because I'm reorganizing." Finally, Robinson
claims he suffered emotional distress when Fredrickson personally moved into Robinson's former
position as a field officer.

 Upon review of the summary judgment proof, there is simply not enough
information to conclude as a matter of law that Supervisors are entitled to summary judgment as
to Robinson's various claims. The good faith test as articulated in City of Lancaster notes two
distinct bodies of information that are relevant in deciding whether a reasonable administrator
could believe that actions taken were lawful: (1) the administrator's conduct itself, and (2) the
information possessed by the administrator at the time the conduct occurred. The record here,
however, gives insufficient contextual basis from which to begin our analysis. For example,
regarding appellants Langguth, Trimble, and Rouse, we do not even know precisely what their
conduct was. We also do not know what information they possessed when making their decisions,
nor whether the decisions made were supported by that information. The summary judgment
evidence does not contain enough details of the circumstances surrounding their actions and
decisions to be able to conclude as a matter of law that those actions and decisions were not
discriminatory or otherwise illegal.

 For example, could appellant Langguth's failure to get back in touch with Robinson
after she had told him that she would "look into" whether his job could be made permanent have
possibly interfered with his job search or career opportunities? Was she actively ignoring
Robinson's request because of his age or disability? As to appellant Trimble's decision to subject
Robinson to the RIF, how is the decision as to which jobs to eliminate usually made? When and
how does a RIF occur, and what are the procedures for its implementation? Were there any
evaluations or reports which could show why the decision to eliminate Robinson's job could be
reasonable? Trimble has not demonstrated that he did not make his decisions based on an illegal
bias. That is, he did not prove that he did not knowingly do something unlawful. 

 Appellant Rouse did not give any objective reasons why a reasonable administrator
could turn down continued funding. Addressing the note found by Robinson, could a reasonable
administrator refuse money for a project simply to avoid working with a particular employee? 
If the project was essential in any way to the Department, did her discretion to refuse funding
end? What was the scope of her discretion?

 The allegations against Phillips and Fredrickson are somewhat different from the
others. Robinson alleges express discriminatory statements made to him by Phillips. In Phillips's
affidavit, he addresses what actions were taken regarding Robinson, and he makes a conclusory
statement that he believed his actions to be legal, but he does not address Robinson's specific
allegation of verbal discrimination.

 Appellant Fredrickson did not even submit an affidavit, so we have virtually no
information at all about the nature or context of his actions.

 In sum, while it might be possible for Supervisors to present conclusive proof of
good faith and the other elements of the official immunity defense, they did not do so in the
present record. The summary-judgment evidence that was submitted is too sketchy to support
summary judgment.


CONCLUSION


 We conclude that appellants Langguth, Trimble, Rouse, Phillips, and Fredrickson
have not presented sufficient summary judgment proof to conclusively satisfy each of the elements
of the official immunity defense; therefore, the trial court did not err in denying summary
judgment. We affirm the trial court's order.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: June 26, 1996

Do Not Publish
1.   This case is governed by the law in effect at the time the cause of action arose,
former article 5221k of the Texas Revised Civil Statutes. Because that statute has been
recodified without substantive change, we will cite to the current code for the sake of
convenience.
2.   Although the Department of Human Services arguably could also have appealed this
order, see City of Houston v. Kilburn, 849 S.W.2d 810, 811-12 (Tex. 1993), it did not do so.