In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-478 CV


____________________



MICHAEL WETHINGTON, Appellant



V.



BILLY & GINGER MANN, Appellees






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 03-02-00918-CV






O P I N I O N


 This appeal arises from a suit filed by Billy and Ginger Mann for the death of their
dog against Michael Wethington. Wethington, an officer of the Stagecoach Police
Department, filed a motion for summary judgment on the grounds of official immunity. The
trial court denied the motion and Wethington appealed pursuant to Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(5) (Vernon Supp. 2005).

 We first address the order at issue on appeal. The trial court's order purports to grant
"Defendant's Motion for Summary Judgment as to recovery for mental anguish and loss of
love, society, and companionship; and as to punitive/exemplary damages and ORDERS that
the Plaintiff's claims are dismissed with prejudice. DENIES as to liability." (1) The parties
treat the order as a grant of Wethington's motion, in part, and a denial of Wethington's claim
of immunity from suit. Pursuant to the order, the only claim for damages remaining in the
suit is for the fair market value of the dog, a Great Dane. However, any challenge to the trial
court's dismissal of the other claims for damages is not appealable at this stage. (2) Therefore,
we only address whether the trial court erred in denying Wethington's claim of official
immunity.

 The standard of review for denial of a summary judgment is the same as for the
granting of a summary judgment. Powell v. Foxall, 65 S.W.3d 756, 758 (Tex. App.--Beaumont 2001, no pet). The movant for summary judgment has the burden of showing
there is no genuine issue of material fact and it is entitled to judgment as a matter of law. 
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). In deciding
whether a disputed material fact issue precludes summary judgment, evidence favorable to
the non-movant is taken as true. Id. at 548-49. Every reasonable inference in favor of the
non-movant is indulged and any doubts are resolved in its favor. Id. at 549. The movant
must either disprove at least one element of each of plaintiff's theories of recovery or
conclusively establish each essential element of an affirmative defense. American Tobacco
Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). If the movant conclusively proves all
essential elements of his defense, the burden shifts to the non-movant. Casso v. Brand, 776
S.W.2d 551, 556 (Tex. 1989). The non-movant must then answer that affirmative defense
for summary judgment purposes. Broussard v. Tyler County Hosp., 831 S.W.2d 584, 586
(Tex. App.--Beaumont 1992, no writ).

 Wethington's summary judgment evidence consists of his affidavit, the affidavit of
Corporal David Miller, Plaintiffs' Original Petition, and classified advertisements for the sale
of Great Dane puppies. In response, the Manns' summary judgment evidence is
Wethington's deposition and the affidavit of Harold Warren. In that order, we consider the
evidence pertinent to the issue of official immunity.

SUMMARY JUDGMENT EVIDENCE


Wethington's Affidavit


 Officer Wethington responded to a call from Montgomery County Sheriff's Dispatch
regarding a dog attack on a child at the Mann residence. Wethington arrived at the scene and
determined it was necessary to locate the dog in order to secure the scene. When he stepped
into the backyard, the dog charged him, "growling and snarling, with its head lowered." 
Officer Wethington feared the dog was going to attack and determined he could not outrun
the dog. He pointed his gun in the dog's direction and discharged his weapon. The dog
shuddered, walked back to the fence and collapsed. 

 Wethington averred it is part of his duties as a police officer to respond to such calls
and that he was acting as a police officer when called to the scene. Further, Wethington
stated that as the result of his training and experience as a police officer, he determined there
were no reasonable alternatives to ensure his safety and the safety of others and concluded
it was necessary to shoot the dog. 

Miller's Affidavit


 David Miller, a corporal in the Montgomery County Sheriff's Department, was called
to the scene shortly after Officer Wethington was forced to shoot the dog. Corporal Miller
averred that Wethington acted reasonably in response to the emergency call and to the
circumstances presented when Wethington arrived as the first unit on the scene. Miller said
Officer Wethington was both prudent and reasonable to search for the dog to determine
whether it still posed a risk. Officer Miller stated standard police training requires an officer
to attempt to secure the scene so as to make it safe to care for any victims, conduct an
investigation, and protect others expected to arrive, such as paramedics and backup officers. 

 Miller further stated that Officer Wethington's use of his weapon when the dog
charged was consistent with the reaction of a reasonably prudent police officer in the same
urgent circumstances. According to Miller, it was reasonable for Wethington to conclude
the dog, having just attacked a child, would attack him and possibly others. Corporal Miller
averred there were no plausible and reasonable alternative courses of action and that the
action Officer Wethington took was the most appropriate response under the circumstances.
Miller stated that given the seriousness of the emergency call, the severity of the injuries
inflicted on the child by the dog, the unknown whereabouts of the dog, the apparent
imminent attack of the large dog, and the probability the dog could attack others,
Wethington's actions, including shooting the dog, were reasonable. Corporal Miller
concluded that a reasonably prudent officer under the same or similar circumstances could
find Officer Wethington's actions were justified. 

Wethington's Deposition


 Officer Wethington testified he had not been provided any training in handling
dangerous animals and the incident in question was his first experience with one. 
Wethington said he received a call from dispatch and replied he would be en route. When
Wethington reached Timbergreen Drive, dispatch called back and informed him the location
was not in the city of Stagecoach. Wethington advised dispatch that "if they would like, I
would check by and advise anyway." Dispatch agreed. Wethington testified the Stagecoach
Police Department has an agency agreement with the Sheriff's office and will respond to
their calls if asked. 

 When Wethington arrived at the scene, he was only aware that a child had been hurt
by a dog. Upon arrival, a woman opened a side door and "yelled '911. My baby is hurt.'" 
Wethington called dispatch and rushed inside the house. Once inside, the woman shut and
locked the door behind him, rushed him through the door to a side room, and shut and locked
that door behind them. Inside the room, Wethington saw blood on the floor and a little girl
crying. The girl had a large gash across her leg, bite marks, and puncture wounds on her
arm. She was severely bleeding. Wethington applied a sock to the leg wound and asked the
woman about other children and herself. Wethington testified at that time he felt he needed
to find the animal because paramedics and other deputies would be arriving. He asked the
woman if the dog was in the house. She screamed and said hysterically that she did not
know. Wethington stepped out the door and the woman locked the door behind him. He
drew his weapon and went toward the center of the house. Wethington looked toward the
back of the house and noticed a pair of French doors; one was ajar approximately one inch.
He walked toward the door, opened it, and stepped onto the patio. 

 Approaching the end of the patio, Wethington saw a little brown dog come from
inside the kennels; the dog was barking at him. He then saw the Great Dane come around
the back of the kennels and out into the yard. The dog started toward Wethington, dropped
its head, growled, and kept coming. Wethington said he could not outrun the dog, so he
"knocked the safety off" his weapon, pointed it in the animal's direction, and fired. 
Wethington approximated his distance from the animal at twenty feet or closer. The dog
stopped, "shuddered real hard," turned toward the fence, walked back to the fence, and
dropped over. Wethington checked the dog and did not notice any breathing. 

 He went back in the house and knocked on the bedroom door to be let in. The child
appeared to be going into shock and Wethington "was hollering for the dispatcher to hurry
up and get the ambulance there." He tried to ask some questions but the woman was really
incoherent. He noticed her shoe had been pulled off, she had grass stains on her pants, and
had what she claimed was a tooth mark across one of her arms. 

Warren's Affidavit


 Harold Warren is a retired peace officer. In his affidavit he stated that in his opinion
Officer Wethington did not act in good faith in that no reasonably prudent official, under the
circumstances present in this case, could have believed his conduct was justified. Warren
stated that Wethington knew the location was outside his jurisdiction and that no reasonable
officer would have believed that he had jurisdiction to respond to the emergency call outside
of his geographic jurisdiction. Further, Warren noted that when Wethington entered the
house, he found the family secure in a closed room, and he left that secure room to search for
the dog. Warren states Wethington's decision to enter the backyard is the foundation of his
opinion that he did not act in good faith because arriving officers and paramedics "could not
have reasonably been expected to approach the scene from the backyard" and "the dog posed
no danger to the public if it was in the backyard." Further, Warren avers the risk of
investigating the backyard was imminent and great and the officer could not have expected
the dog to react any differently. "Thus, by going into the backyard with his gun drawn, the
officer placed himself into a situation where he would have no choice but to use deadly
force." Warren asserts no reasonably prudent officer would place himself in such a situation
unless necessary and it was not necessary, or even prudent, for the officer to enter the
backyard "because he could have confirmed the dog's location from the relative safety of the
backdoor or the fenced driveway." According to Warren, because the officer suspected the
dog was in the backyard, the only reasonable course of action was to confirm the dog's
location from another location and then let animal control deal with the situation. 

ELEMENTS OF DEFENSE OF OFFICIAL IMMUNITY


 Official immunity is an affirmative defense. City of Lancaster v. Chambers, 883
S.W.2d 650, 653 (Tex. 1994). To be entitled to a summary judgment, Wethington had to
establish all the essential elements of that defense. See id. "The elements of the defense of
official immunity are (1) the performance of a discretionary function (2) in good faith (3)
within the scope of the employee's authority." Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex.
1994).

Discretionary Function


 Regarding the first element, an act is not discretionary, i.e., is ministerial, if it requires
obedience to orders or the performance of a duty to which the actor has no choice. See
Chambers, 883 S.W.2d at 654. An act is discretionary if it involves personal deliberation,
decision, and judgment. Id. Investigating and acting on gathered facts is a discretionary
function. See Fowler v. Szostek, 905 S.W.2d 336, 342 (Tex. App.--Houston [1st Dist.] 1995,
no writ). Wethington was investigating a report of a dog attack on a child. His actions at the
scene were based on the facts gathered. These actions required deliberation, decision, and
exercise of judgment. We therefore find the summary judgment evidence shows Wethington
was carrying out a discretionary function.

Good Faith


 Good faith, the second element, requires this court to look to whether a reasonably
prudent officer, under the same or similar circumstances, could have believed his or her
conduct was justified based on the information the officer possessed at the time. See
Telthorster v. Tennell, 92 S.W.3d 457, 465 (Tex. 2002). The officer need not prove all
reasonably prudent officers would have engaged in the same conduct, only that a reasonably
prudent officer might have reached the same decision under the same circumstances. Id. 
That an officer was negligent will not defeat good faith; it is an objective test that inquires
what a reasonable officer could have believed. Id.

 Officer Wethington's affidavit and Corporal Miller's affidavit provide summary
judgment proof of good faith. The facts sworn to in those affidavits are such that a
reasonably prudent officer could have believed Wethington's conduct was justified. 

 Offered as controverting evidence is Warren's affidavit. Warren complains mainly
of Wethington's decision to enter the backyard, and asserts it was unnecessary and posed too
great a risk. Warren's complaints are well-founded only if Wethington knew the dog was
in the backyard and that the dog was secured. There is no summary judgment evidence that
Wethington knew where the dog was or that the dog could not get out of the yard. The
evidence shows Wethington knew a dog had attacked a child, a door leading to the backyard
was ajar, other officers and paramedics would be arriving at the scene, and the location of
the dog was unknown. The record does not establish that no reasonable officer could have
believed a search for the dog was justified. Accordingly, we find the summary judgment
evidence established Officer Wethington entered the backyard in good faith. 

 Warren also alleges that because Wethington knew the location was outside his
geographical jurisdiction, Wethington could not have believed he had jurisdiction to respond
to the emergency call. Wethington's testimony from his deposition clearly shows he
believed otherwise. The call Wethington received was from the Montgomery County
Sheriff's Office dispatcher. Wethington testified that "if the dispatcher had completely
disregarded me, then I would have disregarded the call." Appellees cite no authority, and we
are aware of none, holding it is unlawful for a police officer to respond to an emergency call
outside his geographical jurisdiction. There is no evidence that a reasonably prudent officer
could not have believed responding to the emergency call was justified. Accordingly, we
find the summary judgment evidence established Wethington acted in good faith.

 Scope of Authority


 The third element, scope of authority, is satisfied if the official is discharging the
duties generally assigned to him or her. See Chambers, 883 S.W.2d at 658. "The fact that
a specific act that forms the basis of the suit may have been wrongly or negligently
performed does not take it outside of the scope of authority." Koerselman v. Rhynard, 875
S.W.2d 347, 350 (Tex. App.--Corpus Christi 1994, no writ). Officer Wethington's affidavit
avers his duties include responding to such calls and that he was acting as a police officer
when called to the scene. There is no controverting evidence. Rather, appellees focus on the
fact that the Mann's residence is outside Officer Wethington's geographical jurisdiction.

 Appellees mistake the scope of authority element. An official acts within the scope
of his authority if he is discharging the duties generally assigned to him. Chambers, 883
S.W.2d at 658. Here, Officer Wethington was acting within the scope of his authority as an
officer of the law, responding to an emergency call. We therefore find the summary
judgment evidence established Wethington's actions were within the scope of his authority.

 Consequently, the trial court's order denying Wethington's claim of official immunity
is reversed and judgment rendered that Billy and Ginger Mann take nothing.

 REVERSED AND RENDERED.





 CHARLES KREGER

 Justice


Submitted on April 28, 2005

Opinion Delivered August 11, 2005



Before Gaultney, Kreger, and Horton, JJ.
1. The italicized language is handwritten.
2. Absent statutory authorization, only final judgments are appealable. Stary v.
DeBord, 967 S.W.2d 352, 352-53 (Tex. 1998).