TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00179-CV




City of San Angelo Fire Department and Kelly Hood, Appellants

v.

Sheila Hudson, Appellee





FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-02-1279-C, HONORABLE BEN WOODWARD, JUDGE PRESIDING




O P I N I O N


                        Appellants City of San Angelo Fire Department and Kelly Hood


 are defending a
lawsuit brought by Sheila Hudson alleging personal injury and property damage caused by the
operation or use of a motor vehicle by a governmental entity or employee under the Texas Tort
Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. §§101.001-.109 (West 2005). Appellants assert
that, because the City and Hood enjoyed sovereign immunity and official immunity, the trial court
erred in denying their motions for summary judgment. We will reverse the order of the trial court
and render judgment dismissing Hudson’s claims.
 
BACKGROUND
                        On August 20, 2002, Hood, a City of San Angelo fire fighter, drove a pumper truck 
in response to a dispatch report of a strong odor of something burning in a daycare facility with
occupants still inside the building. Because he was only a few blocks from the daycare facility and
because the other two dispatched engines were coming from a greater distance, Hood anticipated
being the first pumper truck on the scene and being responsible for evaluating the scene, evacuating
the occupants, and making the initial attack on the fire. Hood contends he proceeded south in the
outside lane of Abe Street below the speed limit of 35 miles per hour, with emergency lights and
sirens activated and blowing the air horn. He avers that he slowed as he approached the intersection
of Abe and Beauregard, looked both ways, observed traffic stopped in all directions, and, believing
all east and west traffic was yielding, entered the intersection against the light at around 10 miles per
hour.
                        Hudson entered the intersection at a speed of 25 miles per hour after observing that
her light was green.


 In the intersection, the pumper truck collided with Hudson’s vehicle, which
then spun around and collided with another vehicle, causing damage to the front and side panels of
Hudson’s vehicle and to the left and front of the pumper truck’s bumper. While the firefighters from
Hood’s vehicle administered first aid to Hudson, other fire trucks proceeded to the scene of the
reported fire.

DISCUSSION
                        Appellants moved for summary judgment, but the district denied appellants’ motion. 
Interlocutory orders, like the order denying summary judgment in this case, typically are not
immediately appealable. Gross v. Innes, 988 S.W.2d 727, 729 (Tex. 1998). But section 51.014(a)
of the civil practice and remedies code allows for interlocutory appeals in certain cases. Tex. Civ.
Prac. & Rem. Code § 51.014(a) (West 1997 & Supp. 2004-05); Gross, 988 S.W.2d at 729. 
Specifically, section 51.014(a)(5) provides for interlocutory appeal from an order that denies a
motion for summary judgment that is based on an assertion of immunity by a governmental actor. 
Tex. Civ. Prac. & Rem. Code § 51.014(a)(5). In their motion for summary judgment, appellants
asserted that the claims against Hood were barred because Hood had official immunity.
                        When reviewing the denial of a summary judgment, we apply the same standard used
in reviewing the grant of a summary judgment. El Paso County v. Ontiveros, 36 S.W.3d 711, 714-15
(Tex. App.—El Paso 2001, no pet.). In a traditional summary judgment motion, the movant has the
burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005). We
take as true evidence favorable to the non-movant and resolve all doubts in its favor. Friendswood
Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996); Harwell v. State Farm Mut. Auto. Ins.
Co., 896 S.W.2d 170, 173 (Tex. 1995). The movant is entitled to summary judgment if the evidence
disproves, as a matter of law, at least one element of each of the plaintiff’s causes of action or
conclusively establishes each element of an affirmative defense. Friendswood, 926 S.W.2d at 282. 
To establish an affirmative defense, the defendant-movant must present summary judgment evidence
that establishes each element of the affirmative defense as a matter of law. See Ryland Group, Inc.
v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).
                        A summary judgment may be based on uncontroverted testimonial evidence of an
interested witness if the evidence is clear, positive and direct, otherwise credible and free from
contradiction, and could have been readily controverted. Tex. R. Civ. P. 166a(c). If the defendant
establishes a right to summary judgment, the burden shifts to the plaintiff to present evidence raising
a material fact issue. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 
                        On appeal, appellants raise four issues. However, because we find issues two and
three dispositive of the appeal, we do not reach appellants’ first and fourth issues.


 In their second
issue, appellants assert that the district court should have granted the City’s traditional motion for
summary judgment. Appellants contend they conclusively proved that Hood did not violate any
applicable law, and, therefore, the City’s immunity from suit was not waived. In their third issue,
appellants argue that the trial court erred in denying Hood’s traditional motion for summary
judgment based on official immunity because he conclusively established that he acted in good faith
in the performance of discretionary duties within the scope of his employment. 
 
Sovereign Immunity not Waived
                        In their second issue, appellants assert the City’s sovereign immunity was not waived. 
A governmental unit is immune from suit and liability unless the state consents. Dallas Area Rapid
Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003). Governmental immunity from suit defeats a
court’s subject-matter jurisdiction. Id. Whether a trial court has subject-matter jurisdiction is a
question of law we review de novo. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998). 
                        “In a suit against a governmental unit, the plaintiff must affirmatively demonstrate
the court’s jurisdiction by alleging a valid waiver of immunity.” Whitley, 104 S.W.3d at 542
(emphasis added). The Tort Claims Act waives sovereign immunity for damage and injury caused
by the wrongful act or omission or negligence of an employee operating or using a motor vehicle
within the scope of his employment. Tex. Civ. Prac. & Rem. Code Ann. § 101.021. This waiver
does not apply where the claim arises from the action of an employee responding to an emergency
call in compliance with applicable laws and ordinances.


 Id. § 101.055(2). 
                        The underlying policy of the emergency response exception is to balance the safety
of the public with the need for prompt response from emergency personnel. City of Amarillo v.
Martin, 971 S.W.2d 426, 429 (Tex. 1998). Imposing liability for a mere failure in judgment could
deter emergency personnel from acting decisively and from taking calculated risks. Id. at 430
(quoting Saarinen v. Kerr, 644 N.E.2d 988, 992 (N.Y. 1994)). This would also allow for judicial
second guessing of the split-second and time-pressured decisions emergency personnel are forced
to make. See id. (quoting Saarinen, 644 N.E.2d at 992).
                        The legislature has placed a higher burden upon civilian drivers than upon
emergency-vehicle drivers; this burden is justified because emergency-vehicle operators face more
exigent circumstances than civilian drivers and because civilian drivers have the advantage of being
able to prevent collisions with emergency vehicles due to the emergency vehicles use of sirens and
lights and due to the conspicuous coloring of emergency vehicles. Id. at 431-32. Emergency
responders are entitled to presume other drivers will respect emergency priorities. Id. at 432.
                        To establish the affirmative defense under section 101.055(2) for the purposes of
summary judgment, appellants must prove Hood was responding to an emergency call and acted in
compliance with the laws applicable to the emergency situation. See Durham v. Bowie County, 135
S.W.3d 294, 298 (Tex. App.—Texarkana 2004, pet. denied); see also City of Galveston v. Whitman,
919 S.W.2d 929, 931 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (section 101.055(2)
requires government to demonstrate compliance with laws and ordinances to prevent waiver of
immunity). 
                        The transportation code provides that, in operating an authorized emergency vehicle,
a state employee may proceed past a red light after slowing as necessary for safe operation if that
operator is responding to but not returning from a fire alarm. Tex. Transp. Code Ann. §§ 546.001,
.002 (West 1999 & Supp. 2004-05). Moreover, the operator must use, at his discretion and in
compliance with local government or department policy, appropriate audible or visual signals. Id.
§ 546.003 (West 1999). The transportation code does not relieve emergency-vehicle operators from
the duty to exercise appropriate regard for the safety of all persons or from the consequences of
reckless disregard for others’ safety. Id. § 546.005 (West 1999). The action of an emergency-vehicle operator constitutes a reckless disregard for the safety of others when the operator knows or
should have known that the action in question posed a high risk of serious injury to others. Smith
v. Janda, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.).
                        Similarly, the San Angelo Code of Ordinances permits a driver of an authorized
emergency vehicle responding to an emergency call or responding to but not returning from a fire
alarm to proceed past a red light or stop signal if the driver uses audible signals while in motion as
may be reasonably necessary and if the vehicle is equipped with at least one red lighted lamp
normally visible from 500 feet, but “only after slowing down as may be necessary for safe
operations.” San Angelo, Tex., 1959 Code of Ordinances, Sec. 10-3-2 § 10.102(g)(2)(B), (3) (1959). 
The San Angelo code does not relieve the driver from the duty to drive with due regard for the safety
of all persons or protect the driver from the consequences of his reckless disregard for the safety of
others. Id. § 10.102(g)(4). 
                        The uncontroverted evidence establishes that Hood was responding to an emergency
call, and, therefore, appellants have satisfied the first requirement for the claimed affirmative
defense. We now turn to whether appellants have conclusively established that Hood’s response
complied with the applicable laws and ordinances. 
                        In his affidavit, Hood stated that he was driving below the speed limit, that he
significantly slowed as he was reaching the intersection, that he looked in both directions and
observed that traffic had yielded to him before going through the intersection, and that his speed
when going through the intersection was, at maximum, ten miles per hour. Further, Hood stated that,
because the traffic had yielded to him, he concluded it was best to move slowly through the
intersection rather than coming to a complete stop because he would lose precious time as the truck
takes a great deal of time to accelerate after stopping completely. Hood also stated in a deposition
that he had his foot on the brake when proceeding through the intersection and applied his brake
harder when he observed Hudson’s car heading towards the intersection.
                        In addition, Hood stated that the siren and lights were activated and that another
firefighter was sounding the air horn as the truck approached the intersection. Although Hudson
asserts she did not see or hear the truck, witnesses and the police report indicate that the lights,
sirens, and air horn were used. One driver stated in an affidavit that, after hearing the fire truck, he
stopped prior to entering the intersection and observed that traffic had stopped to yield to the fire
truck. The witness also stated that the fire truck did not appear to be speeding.
                        We hold that appellants have conclusively demonstrated that Hood complied with the
applicable statutes and ordinances as a matter of law. See Smith, 126 S.W.3d at 545-46 (holding
ambulance driver not reckless as matter of law under emergency response exception after
demonstrating that he responded to emergency situation, that he activated ambulance’s lights and
siren, that he slowed when approaching intersection and observed drivers yielding to ambulance, and
that he proceeded through intersection without coming to complete stop). Accordingly, the burden
shifts to Hudson to raise a genuine issue of material fact regarding Hood’s compliance with the
applicable statutes and ordinances. See id.
                        Although admitting in her deposition that she did not know whether the fire truck
slowed because she did not see it, Hudson points to two witness affidavits as proof that Hood failed
to follow applicable laws and ordinances and that he acted in conscious indifference or reckless
disregard for the safety of others.


 Hudson also alleges that the damage to her vehicle and to the fire
truck suggest Hood was speeding when he entered the intersection.
                        The affidavit of John David Brunson, a witness to the accident, indicates that the fire
truck “entered the intersection from the outside lane without stopping” and that “I [Brunson] did not
hear the fire truck put on its brakes.” The affidavit of April Harrington, another witness, stated that
three other emergency vehicles had gone through the intersection five minutes before Hood drove
through the intersection so “I [Harrington] don’t understand why this fire truck had to rush[,]” that
“the fire truck slammed into the red car full force,” and that “the fire truck did not use its brakes at
all when entering the intersection.”



                        Neither affidavit raises a fact issue that Hood did not slow as necessary before
proceeding through an intersection with a red light or acted with reckless disregard for the safety of
others. Brunson’s observations—that Hood “entered the intersection . . . without stopping” and that
Brunson “did not hear” brakes being applied—are not evidence of reckless disregard for the safety
of others, nor are they evidence Hood did not slow as necessary for safe operation. That an
automobile enters an intersection without stopping could be as true of an automobile traveling at one
mile per hour as one traveling at sixty miles per hour. Merely stating the truck entered the
intersection without stopping is not evidence of recklessness or conscious indifference without an
indication of other observations describing the circumstances or conditions that made the action
reckless or consciously indifferent. Similarly, the fact that Brunson did not hear the truck brake does
not address whether the driver slowed as necessary or acted with reckless disregard for the safety of
others. That one does not “hear” brakes does not establish that slowing did not occur prior to Hood
entering the intersection.
                        Harrington’s conclusory observation that the large pumper truck “slammed” into
Hudson’s car “full force” does not provide evidence raising a fact issue about Hood’s regard for the
safety of others or whether he slowed as necessary. The statement does not describe the conditions
under which the collision occurred and does not describe the speed of either vehicle. Similarly,
Harrington’s statement that she did not understand why the fire truck needed to rush because she had
seen other emergency vehicles pass through the intersection does not indicate whether Hood slowed
as necessary or acted with disregard for the safety of others. Hood was responding to an emergency,
believed his vehicle would be the first to arrive due to its proximity to the emergency, and was
unaware that other emergency vehicles had responded to the situation. Hood demonstrated that,
under the circumstances as he understood them to be, there was a need to proceed through the
intersection without stopping.
                        Finally, given the apparent substantial difference in weight between the truck and
Hudson’s car, Hudson’s evidence of damage to the fire truck and to her car, without more, is not
enough to overcome the evidence Hood offered to prove he complied with the applicable statutes
and ordinances. There is no evidence or expert testimony estimating the speed of the vehicles prior
to the collision based on the amount of damage each vehicle sustained.
                        The summary judgment evidence conclusively establishes that Hudson’s claim arises
from Hood’s response to an emergency call and that Hood’s action was in compliance with the laws
and ordinances applicable to the emergency action. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.055(2). Consequently, the waiver of sovereign immunity does not apply. Accordingly, we
sustain appellants’ second issue and will reverse the summary judgment and render judgment
dismissing Hudson’s suit against the City for lack of subject-matter jurisdiction.

Official Immunity 
                        Appellants argue in their third issue that the trial court erred in denying Hood’s
motion for summary judgment based upon official immunity, claiming that he produced competent
summary judgment evidence establishing that he acted in good faith in the performance of his
discretionary duties within the scope of his authority and that Hudson failed to establish that no
reasonable person in Hood’s position could have thought that the facts justified his action.


 Hudson
responds that Hood is not entitled to official immunity because he was not performing discretionary
duties and because he was not acting in good faith.
                        Official immunity is an affirmative defense that shields public employees from
personal liability in a suit arising from an employee's good faith performance of discretionary duties
performed within the scope of his authority. See University of Houston v. Clark, 38 S.W.3d 578, 580
(Tex. 2000); Wadewitz v. Montgomery, 951 S.W.2d 464, 465-66 (Tex. 1997); City of Lancaster v.
Chambers, 883 S.W.2d 650, 653 (Tex. 1994). As Hudson does not argue that Hood was not acting
within the scope of his authority, we now determine whether Hood was performing discretionary
duties in good faith.

       Discretionary Duties 
                        Hood argues that he conclusively proved he was performing a discretionary act in
responding to the report of the fire. Actions that involve personal deliberation, decision, and
judgment are discretionary; actions that require obedience to orders or the performance of a duty to
which the actor had no choice are ministerial. Chambers, 883 S.W.2d at 654; see also Eakle v.
Texas Dep’t of Human Servs., 815 S.W.2d 869, 873 (Tex. App.—Austin 1991, writ denied)
(discretion means “power to chose among alternatives within legal bounds”). Chambers held that
police officers engaging in a high-speed chase was a discretionary act because they had to elect
whether to undertake pursuit, choose a route, choose speed and following distance, and decide
whether to call for backup. Chambers, 883 S.W.2d at 655. The Fourteenth District Court of
Appeals has held that “operation of an emergency vehicle in an emergency situation is a
discretionary duty.” City of Houston v. Flaniken, 108 S.W.3d 555, 557 (Tex. App.—Houston [14th
Dist.] 2003, no writ). Flaniken cited another Houston case, Rivas v. City of Houston, 17 S.W.3d 23,
29 (Tex. App.—Houston [14th Dist.] 2000, writ denied), which held that a paramedic’s or
emergency medical technician’s decisions concerning how to transport a person to a medical facility
is discretionary despite arguments that the driver was merely driving when the accident occurred and
was required to use lights and a siren. Id.
                        Here, Hudson argues that Hood was not performing a discretionary function in
responding to the call because he did not choose whether to respond to the call, because lights and
sirens were mandatory, and because he knew the quickest way to the scene and was therefore the
lead vehicle. Although we recognize that driving a fire truck in an emergency situation presents
different challenges than engaging in high-speed pursuit or transporting a combative patient to
medical care, we do not believe that the distinction is dispositive on the issue of whether Hood could
have been performing discretionary acts in this case. Rather, we must determine whether Hood’s
actions involved personal deliberation, decision, and judgment. Chambers, 883 S.W.2d at 654.
                        Hood presented uncontroverted evidence that he was responding to an emergency call
and that he believed he would be the first pumper truck to arrive. Hood averred that he led the other
fire truck because he knew the location and potential route best and that he determined the best and
quickest route. Hood’s affidavit indicated that he decided to travel well below the speed limit,
although he did not have a duty to do so, after having evaluated the traffic concentration and chosen
to drive in the westernmost lane in order to best reach the scene of the fire. Hood gave his reasons
for deciding to proceed through the red light and for the speed at which he chose to enter the
intersection and outlined his decisionmaking process: “I determined that the extremely urgent need
to get to the scene as quickly as possible, significantly outweighed the risk that another vehicle
would not hear or see the emergency signals or see that all other traffic was stopped.” He stated that
he believed most other emergency vehicle operators would have made the same decision. Hood’s
expert, Fire Chief Alexander Rodriguez, agreed in his affidavit that Hood’s perceptions and beliefs
were reasonable and that he appropriately weighed his alternatives and balanced needs and risks.
                        The evidence demonstrates that Hood’s actions involved personal deliberation,
decisions, and judgment. The affidavits evaluate a string of choices and the wisdom of Hood’s
judgments, not whether he was correctly performing a ministerial duty about which he had no choice. 
See Chambers, 883 S.W.2d at 654. Hudson did not offer evidence that Hood was merely performing
a ministerial duty. We therefore hold that Hood conclusively proved he was performing a
discretionary function at the time of the accident.

       Good Faith
                        Hood argues that he also conclusively proved that he acted in good faith for purposes
of establishing official immunity. A city employee acts in good faith if a reasonably prudent
employee could have believed that his acts were justified. Chambers, 883 S.W.2d at 656. To prevail
on the good faith element of official immunity, the government must show how a reasonably prudent
employee, based on the employee’s perception of the facts at the time of the event, could have
assessed the need to which the employee responds and the risks of the actions taken and believed that
the need outweighed the risk involved. See Wadewitz, 951 S.W.2d at 467; Chambers, 883 S.W.2d
at 656. Expert testimony regarding good faith will support summary judgment only if it is not
conclusory; it is clear, positive, direct, otherwise credible, and free from contradictions and
inconsistencies; and it could have been readily controverted. Wadewitz, 951 S.W.2d at 466. It must
address whether a reasonably prudent employee could have believed under the circumstances that
the need outweighed the risk of the actions taken and must substantiate its conclusions with reference
to the need and risk involved. See id. at 467 (citing Chambers, 883 S.W.2d at 656-57).
                        The “need” prong of this test refers to the urgency of the circumstances. Id. Hood
avers that, because he reasonably anticipated being the first truck on the scene and because his
information from dispatch was that a structure fire occurred at a women’s and children’s home or
daycare facility and that an unknown number of children and adults were still in the building, he
believed it was extremely urgent that he reach the scene as quickly as possible and that his immediate
presence was necessary to prevent injury or death. Hood repeated these concerns about the level of
need in discussing his decision-making process regarding entering the intersection against the light
without stopping and opined that most other emergency vehicle drivers would agree that the urgent
need to arrive and evacuate children from a fire at a day care center outweighed the risk involved. 
Hood’s expert, Rodriguez, agreed. Rodriguez reviewed the information Hood had at the time,
including the lack of information on how many children needed to be evacuated and Hood’s position
as lead vehicle,


 and opined that Hood “properly and reasonably assessed the urgent need to
immediately reach a reported structure fire where children were present in order to prevent injury
or loss of life, [and] that he weighed the alternatives available, whether to stop . . . and lose . . . time
in re-accelerating or . . . proceed through the intersection.” Hudson cites evidence that Hood could
have missed her car had he arrived a few seconds later


 and that another fire truck and two
ambulances were already at the scene to show that the need was not great. However, she does not
contradict Hood’s and Rodriguez’s affidavits indicating that a reasonable officer or employee could
have believed the need was compelling under the circumstances.
                        The “risk” prong of the good faith test refers to any countervailing public safety
concerns such as the nature and severity of the harm that could occur, including injuries to
bystanders or an accident preventing him from reaching the emergency and whether any risk of harm
would be clear to a reasonably prudent employee. Id. In Wadewitz, the summary judgment evidence
was insufficient to establish good faith because it failed to address the degree, likelihood, and
obviousness of the risks Wadewitz created. Id. Hudson argues that in this case Hood’s expert makes
only conclusory statements and fails to assess the degree, likelihood, or obviousness of the risks
Hood’s actions created.
                        We disagree with Hudson’s assertions. Hood’s affidavit lists and analyzes the actual
risks he considered and weighed against the perceived need. These included awareness that the light
remained red as he approached the intersection; that there was congested traffic along his route; that
a vehicle might not yield or might not note the emergency lights, siren, and air horn; and that a
collision might prevent him from timely reaching the scene. His affidavit shows that he considered
the risks, looked for traffic that might pose a danger, and weighed the risks and need before
proceeding through the light. Rodriguez’s affidavit discusses the circumstances as Hood perceived
them and concludes that Hood believed that the risk was minimal because he had seen traffic stopped
in all directions and because he had slowed to further reduce the risk of serious injury. Given these
factors involving the likelihood and severity of the risk, Rodriguez goes on to opine that Hood
balanced the need against the risk and to explain the basis for this opinion: “because he observed and
perceived that traffic had stopped in both directions and further because he felt his low speed would
minimize the risk” and severity of a collision.


 Because Hood and his expert took both sides of the
Chambers good faith balancing test into account, we hold that the requisite basis existed for
concluding that a reasonable fire truck driver in Hood’s position could have believed that his actions
were justified. See Hale v. Pena, 991 S.W.2d 942, 946 (Tex. App.—Fort Worth 1999, no pet.)
(affidavits must take both need and risk factors into account in order to show basis for concluding
officer acted in good faith).



                        Hudson argues that the unreasonableness of Hood’s actions is demonstrated by
Hood’s admission that he knew there were risks because the intersection was busy, that there is a
constant concern that drivers might not hear or see his lights and sirens, and that traffic could not
have been stopped as Hood believed because he, in fact, collided with Hudson’s car as it proceeded
through the intersection. We do not agree that the evaluation of risks in Hood’s affidavit indicates
that his action was necessarily unreasonable or that Hood’s inaccurate perception necessarily renders
it unreasonable for him to have believed that all traffic was stopped based upon his knowledge at the
time. If this were so, any admission that a risk existed would defeat the element of good faith, and
any collision would be adequate evidence that a reasonable employee would have assessed the risk
differently, thereby vitiating the doctrine of official immunity in most or all cases. Official immunity
is designed to encourage emergency personnel to take reasonably calculated risks when they have
properly considered need and risk, not to punish them for having done so.
                        Given the evidence of need and risk, we hold that appellants have established that a
reasonably prudent employee under the same or similar circumstances would have believed that
proceeding through the intersection despite the red light was justified and that Hood acted in good
faith. Wadewitz, 951 S.W.2d at 467; Chambers, 883 S.W.2d at 656-57; see Hale, 991 S.W.2d at 946
(summary judgment evidence must establish that reasonably prudent officer would have taken same
act to prove good faith). Having held that appellants conclusively established that Hood was
performing discretionary acts in good faith within the scope of his employment, we hold that he was
entitled to summary judgment on the affirmative defense of official immunity. See Clark, 38 S.W.3d
at 580 (describing affirmative defense); Friendswood Dev. Co., 926 S.W.2d at 282 (entitlement to
summary judgment).
                        Accordingly, we reverse the order of the district court denying summary judgment
to Hood on the affirmative defense of official immunity and render judgment granting Hood’s
motion.

CONCLUSION
                        Having determined that sovereign immunity shields the City of San Angelo from suit,
we dismiss Hudson’s claims against it for want of jurisdiction. Having determined that official
immunity shields Hood from Hudson’s claims against him, we reverse the order of the district court
and render judgment granting summary judgment in his favor. 
 
 
                                                                                                                                                            
                                                                        David Puryear, Justice
Before Justices Kidd, Patterson and Puryear;
       Justice Kidd Not Participating
Dismissed for Want of Jurisdiction in Part; Reversed and Rendered in Part
Filed: November 3, 2005