**Romeo CHAPA, II, Appellant,**

v.

**Alma AGUILAR, as next Friend of Mario Obregon, a Minor, and Rosa Martinez, as next Friend of Elizabeth Rodriguez, a Minor, Appellees.**

No. 01–96–01517–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 26, 1997.

---

Frank E. Sanders, Houston, for Appellant.

Deborah A. Beck, Houston, for Appellees.

Before HEDGES, MIRABAL and ANDELL, JJ.

## OPINION

HEDGES, Justice.

In this interlocutory appeal, we are asked to decide whether the trial court erred in denying summary judgment to appellant Romeo Chapa, II, a Harris County deputy constable, on his affirmative defense of official immunity in a personal injury suit. We reverse.

The following facts are uncontroverted. On April 7, 1995, at around 9:30 p.m., Chapa was on patrol in a marked police car, heading south on Fondren. While he was stopped at the intersection of Fondren and Clarewood, he saw a van in front of him run the red light. Chapa turned on his flashers, but not his siren, and drove into the intersection. He crashed into a car heading east on Clarewood, driven by Mario Obregon, an unlicensed, uninsured 15–year–old. Obregon and his passenger, Elizabeth Rodriguez, were both injured in the accident and taken to Ben Taub hospital. Both cars sustained serious damage.

The officer called to the scene of the accident faulted Chapa. After Lt. R.E. Rankin investigated the accident, he submitted a report in which he concluded Chapa "used poor judgment in his attempt to stop the violator in front of him" and "did not enter the intersection (on the red light) in a safe and cautious manner." Based on this report, Capt. R.T. Johnson advised Chapa he "did not enter the intersection of Fondren and Clarewood in a safe and timely manner and did not have control of the situation." As a result, Chapa was suspended for one day without pay and ordered to attend a police driver training course.

Plaintiffs [1] sued Harris County and Chapa (in his official capacity as a deputy constable) for negligence and violation of article 6701d.[2] Chapa filed a motion for summary judgment, based on the affirmative defense of official immunity. As summary judgment proof, Chapa filed his own affidavit and the affida-

vits of two other police officers. In support of their response to the motion for summary judgment, plaintiffs filed excerpts from Chapa's deposition, and the defendants' responses to interrogatories and requests for production of documents. The trial court denied Chapa's motion for summary judgment, and this interlocutory appeal ensued.

In points of error one, two, and three, Chapa asserts that the trial court erred in overruling his motion for summary judgment because: (1) the summary judgment evidence showed that he was entitled to official immunity as a matter of law; (2) plaintiffs did not show that he did not act in good faith, i.e., that no reasonable person in his position could have thought his acts were justified; and (3) there was no evidence that he did not act in good faith.

■ Ordinarily, a party may not appeal from denial of a motion for summary judgment. *City of Columbus v. Barnstone*, 921 S.W.2d 268, 271 (Tex.App.—Houston [1st Dist.] 1995, no writ). However, a party may appeal an interlocutory order denying a motion for summary judgment based on an assertion of immunity by a person who is an officer or employee of the state, or of a political subdivision of the state. TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.1998).

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). When we review the disposition of a motion for summary judgment, this Court takes all evidence favorable to the nonmovant as true. *Johnson*, 891 S.W.2d at 644. We must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Id.*

1. Plaintiffs are Alma Aguilar, as next friend of Mario Obregon, a minor, and Rosa Martinez, as next friend of Elizabeth Rodriguez, a minor.

2. Act of May 29, 1969, 61st Leg., R.S., ch. 534, 1969 Tex.Gen.Laws 1671, *repealed by* Act of May

1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex.Gen.Laws 1870 (current version at TEX. TRANSP. CODE ANN. § 545.062 (Vernon Pamph. 1997)) (following distance).

An affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for summary judgment. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991). If a defendant moves for summary judgment based on an affirmative defense, the defendant's burden is to prove conclusively all the elements of the affirmative defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Unless the movant conclusively establishes the affirmative defense, the non-movant plaintiff has no burden to respond to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Cas. & Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970).

 Official immunity is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Government officials are entitled to official immunity from suit arising out of their performance of (1) discretionary duties, (2) in good faith, as long as they are (3) acting within the scope of their authority. *Chambers,* 883 S.W.2d at 653; *Barnstone,* 921 S.W.2d at 272.

 An on-duty officer in his squad car is performing a discretionary duty within the scope of his authority when he pursues a suspect. *Chambers,* 883 S.W.2d at 655, 658. The parties here dispute only whether Chapa satisfied the element of "good faith." An officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *Chambers,* 883 S.W.2d at 656.

 The Texas Supreme Court recently clarified the summary judgment burden for a defendant police officer claiming official immunity. *Wadewitz v. Montgomery,* 951 S.W.2d 464 (Tex. 1997). An expert witness's conclusory statement that a reasonable officer *could have taken* some action does not suffice to establish good faith at the summary judgment stage. *Id.,* at 951 S.W.2d at 466. Instead, expert testimony on good faith must address what a reasonable officer *could have believed* under the circumstances, and

must be *substantiated* with reference to *each aspect* of the *Chambers* balancing test. A court must balance the *need* to which an officer responds against the *risks* of the officer's course of action, based on the officers' perception of the facts at the time of the event. *Wadewitz,* 951 S.W.2d at 466. In the context of an emergency response, *need* is determined by factors such as:

- the seriousness of the crime or accident to which the officer responds;

- whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect;

- what alternative courses of action, if any, are available to achieve a comparable result.

*Id.* The *risk* aspect of good faith refers to the countervailing public safety concerns, such as:

- the nature and severity of harm that the officer's actions could cause (including injuries to bystanders, as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency)

- the likelihood that any harm would occur; and

- whether any risk of harm would be clear to a reasonably prudent officer.

 We believe that the affidavits were sufficient to establish that appellant acted in good faith. Chapa's affidavit may be distinguished from those in *Wadewitz.* There, the affidavits were deficient because they did not address the element of risk. Here, Chapa swore in pertinent part:

I was on duty and patrolling southbound on Fondren when I observed a van that was directly in front of me about thirty feet away blatantly and flagrantly run a red light. I considered the facts observable to me such as: the condition of the streets, it was clear and dry and visibility was good, I was on a divided street with three lanes on each side of a median, traffic was light. Based on the facts known to me, I determined that I needed to attempt

to apprehend the driver of the van and that the risk to the public was slight.

(Emphasis added.) Although detail is minimal, and few of the *Wadewitz* relevant factors are included, the affidavit addresses both need and risk. We believe Chapa's affidavit is not merely conclusory. Another distinction distances his affidavit from those in *Wadewitz*. There, the plaintiffs submitted a countervailing affidavit from an expert who declared that no reasonable, prudent officer would have acted as the defendant did. Here, appellees offered no affidavit to rebut to Chapa's affidavits in support of his motion for summary judgment. This affidavit meets the *Wadewitz* standards.

To hold otherwise would lead to a deterioration of the standard by which we judge good faith. If we were to find Chapa's affidavit wanting under *Wadewitz*, we would be supplanting a very broad standard with a narrow one. This substitution portends pernicious consequences.

Why does governmental immunity exist at all? Because we as a society have decided that it is in our best interest to protect peace officers from being sued for negligence, so long as they perform their duties in good faith. This latitude allows them to carry out their official responsibilities unhesitatingly. But we punish an officer who acts in bad faith by holding him responsible for his negligence. We define bad faith as conduct in which no other reasonable, prudent officer would have engaged.

The supreme court recognized that we lower courts struggle routinely with the adequacy of affidavits in governmental immunity suits. The factors enumerated in *Wadewitz* represent an attempt to clarify a murky area. These factors apply to a host of situations, *e.g.*, traffic stops, apprehension of fleeing suspects, dispatches to crime scenes, that require very different modes of evaluation. Each scenario must be examined within its own context, not according to a slavish adherence to inflexible, ironclad rules.

We do not believe that the Texas Supreme Court expected the appellate courts to apply the *Wadewitz* list so literally or as rigorously as to find Chapa's affidavit inadequate. The good faith standard recognizes that an officer

may act in good faith and still be negligent. Were we to rely upon the department's internal report citing appellant for negligence, we would be using negligence as proof of bad faith. Such a result decimates the concept of governmental immunity, because its very essence is the protection of officers from the consequences of their negligent acts. The standard is turned on its head: if there is evidence of negligence, we will not protect the officer from the consequences of his negligence!

Our holding today should not be read as an endorsement of high speed chases or reckless pursuit. But when we subject what is essentially a split-second decision to standards we draft at our leisure, we run the risk of stifling a peace officer's ability to unhesitatingly respond to crisis. This guts the very purpose of good faith immunity. We would be narrowing what should remain a broad, even forgiving, standard.

We sustain points of error one, two, and three.

We reverse and render judgment for appellant.

MIRABAL, J., dissenting.

O'CONNOR, J., requested a vote to determine if the case should be heard en banc, pursuant to TEX. R. APP. P. 41.2(c).

SCHNEIDER, C.J., and COHEN, HEDGES, ANDELL, TAFT and NUCHIA, JJ., voted against en banc consideration.

MIRABAL, O'CONNOR and WILSON, JJ., voted for en banc consideration.

O'CONNOR and WILSON, JJ., join MIRABAL's, J., dissent.

MIRABAL, Justice, dissenting.

The Texas Supreme Court has set out specific guidelines for our review of rulings on motions for summary judgment based on the official immunity defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464 (Tex. 1997). Constrained, as we are, to follow Texas Supreme Court precedent, I must dissent.

Reviewing appellant Chapa's summary judgment affidavits in light of the *Wadewitz* standard, I conclude the affidavits are not sufficient to support summary judgment. In Chapa's own affidavit, he set out in detail the actions he took, and concluded:

> At all times I acted in good faith, and believed the risk to the public was low as I was driving a marked police vehicle and did activate my emergency lights as I approached the intersection. I believed the need to stop the van outweighed the risk of harm to the public, and in my opinion other police officers would have acted exactly as I did under the circumstances.

Chapa's statement of his subjective belief that he acted reasonably and in good faith does not meet the requisite objective standard. *Cameron County v. Alvarado,* 900 S.W.2d 874, 880–81 (Tex.App.—Corpus Christi 1995, no writ). Further, Chapa's opinion that "other police officers would have acted exactly as I did under the circumstances" is a conclusory statement that is insufficient to establish good faith under *Wadewitz,* 951 S.W.2d at 466.

In the second affidavit filed by Chapa, Lt. Rankin said:

> In April of 1995 I reviewed a motor vehicle accident that took place at the intersection of Clarewood and Fondren on April 7, 1995, in which Deputy Romeo Chapa was involved. I do not know of anything that indicates Deputy Chapa acted in bad faith at the time of the accident. It was part of Deputy Chapa's job and official duties to attempt to stop traffic law violators that he observed. When Deputy Chapa observed a flagrant and blatant traffic law violation directly in front of him he had to exercise discretion and make a quick decision as to what to do. Based on the flagrant nature of the violation, the fact it occurred directly in front of a marked police vehicle, the weather and visibility conditions, the traffic conditions and roadway conditions, a deputy such as Deputy Chapa could have easily and reasonably believed that the need to apprehend the violator outweighed any risk to the public.

Lt. Rankin's affidavit is insufficient under the *Wadewitz* standard because his conclusions are not *adequately substantiated* by addressing the different factors relevant to a determination of whether a reasonable officer could have believed the need for the emergency response outweighed the risk to the public. Factors such as what alternative courses of action were available to achieve apprehension of the traffic violator; the seriousness of the crime committed (running a traffic light); the nature, severity, and likelihood of the harm an officer could cause by running a red light himself; and whether any risk of harm would be clear to a reasonably prudent officer. By contrast, such factors were addressed by Lt. Rankin in his letter submitted to his superiors after he investigated the accident. The letter, which was filed as part of plaintiffs' responsive evidence, reads in part as follows:

> Deputy Chapa was traveling south on Fondren when he observed that a white van in front of him had just gone through a red light, at Fondren and Clarewood. At this time Deputy Chapa stated that he activated the overhead lights on his vehicle in an attempt to pull over the van in front of him. (The siren was not activated during this incident—only the overhead lights). The traffic control device for Fondren was red when Deputy Chapa drove through it. The traffic control device, for the unit traveling east in the 7700 block of Clarewood, was green as the vehicle entered the intersection and was struck by Deputy Chapa's vehicle.
>
> . . . .
>
> The incident did not involve a pursuit, nor did it involve any high speed driving, or evasive actions, by the violator. According to Deputy Chapa the violator did, indeed, go through a red light. This does not, however, give Deputy Chapa the right to follow the violator through that red light without complete and total due caution on the part of the Deputy.
>
> It appears to me, from the visible damage, that Deputy Chapa did not enter the intersection (on the red light) in a safe, and cautious, manner. He, therefore, was unable to ascertain the proximity of the vehi-

cle approaching the intersection on the green light, thus striking the vehicle in this intersection.

Based upon the information at hand I am of the opinion that deputy Romeo Chapa–II is at fault and I recommend that disciplinary action be taken in this matter.

Unlike this letter to his superiors, Lt. Rankin's summary judgment affidavit failed to address factors such as the lack of evasive action or high speed driving by the violator, the seriousness of the crime, and available alternative courses of action. Because he did not address such factors in his affidavit, Lt. Rankin's conclusions in his affidavit are not "adequately substantiated."

In the third affidavit Chapa submitted, Captain Johnson said:

I have reviewed the accident report and Precinct 5 documents that pertain to Deputy Romeo Chapa's motor vehicle accident of April 7, 1995. Since Deputy Chapa saw a flagrant and blatant violation of a traffic law, the running of a red light, directly in front of him, on a wide, divided street, he could have easily believed that the necessity in stopping or apprehending the violator outweighed any risk of harm to the public . . .

In my opinion, Deputy Chapa's decision to attempt to apprehend the violator was reasonable under the circumstances, and a reasonable patrol deputy in the same situation as Deputy Chapa could have believed the necessity of apprehending such violator outweighed any risk to the public.

Captain Johnson's affidavit suffers from the same defect as Lt. Rankin's affidavit: his conclusions are not "adequately substantiated" by addressing the factors relevant to balancing *need* (the urgency of the circumstances requiring police intervention) against *risk* (countervailing public safety concerns).

I would hold that Chapa did not provide conclusive evidence of good faith under the *Chambers* and *Wadewitz* standards; therefore, the burden never shifted to plaintiffs to rebut good faith. In my opinion, the trial court did not err in overruling Chapa's motion for summary judgment.

I would overrule Chapa's points of error and affirm the judgment.

O'CONNOR and WILSON, JJ., join this dissent.