Appellees= Motions for Rehearing En Banc Granted; Opinion of March 27,
2007 Withdrawn; Affirmed and Majority, Concurring, and Dissenting Opinions on
En Banc Rehearing filed July 15, 2008








 

Appellees= Motions for Rehearing En Banc Granted; Opinion of
March 27, 2007 Withdrawn; Affirmed and Majority, Concurring, and Dissenting
Opinions on En Banc Rehearing filed July 15, 2008.              

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00407-CV

____________

 

CHRISTOPHER GREEN, Appellant

 

V.

 

DWAINIA ALFORD, INDIVIDUALLY AND AS
NEXT FRIEND OF AARON ALFORD, AND RONALD ALFORD, Appellees

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2002-53991

 



 

C O N C U R R I N
G   O P I N I O N  O N  E N   B A N C   R E H E A R I N G

I join in the en
banc court=s judgment, but I respectfully disagree with both the
majority=s description of
the legal standard applicable to the official immunity analysis and the
majority=s decision to
address whether the record contains sufficient evidence that no reasonable
person in Green=s position could have believed that the
facts justified his conduct. 








                    Legal
Standard Applicable to Official Immunity Analysis

In his first
issue, Green argues that the trial court erred by denying his motion for
judgment as a matter of law.  In that motion, Green asserted that the evidence
at trial conclusively proved his defense of official immunity.  To sustain this
issue, this court would have to conclude that the evidence at trial
conclusively proved that Green acted in good faith.[1] 
To determine whether Green acted in good faith, this court must use the
objective standard adopted in City of Lancaster v. Chambers[2]
and ask whether a reasonably prudent official, under the same or similar
circumstances, could have believed that his conduct was justified based on the
information he possessed when he engaged in the conduct.[3]









Good faith depends
on how a reasonably prudent official could have assessed both the need to which
the official was responding and the risks of the official=s course of
action, based on the official=s perception of the facts at the time of
the event.[4] 
The Aneed@ aspect of the
test refers to the urgency of the circumstances requiring an emergency
response, and need is determined by factors such as the seriousness of the
incident to which the official is responding, whether the official=s immediate
presence is necessary to prevent injury or loss of life, and what alternative
courses of action, if any, are available to achieve a comparable result.[5] 
The Arisk@ aspect of good
faith, on the other hand, refers to the countervailing public safety concerns: 
the nature and severity of harm that the official=s actions could
cause (including injuries to bystanders as well as the possibility that an
accident would prevent the official from reaching the scene of the emergency),
the likelihood that any harm would occur, and whether any risk of harm would be
clear to a reasonably prudent official.[6] 
If the record contains conflicting evidence regarding the circumstances upon
which this objective determination of good faith is based, then, for the record
to show good faith, it must contain evidence that proves good faith under the
above legal standard based on the circumstances[7]
and the official=s conduct shown by the legally sufficient
evidence favorable to the claimant.[8]


                                       The
Official Immunity Analysis

The evidence presented at trial would
enable reasonable and fair-minded people to find that the following circumstances
existed when Green entered the intersection:

$        Green was responding to an
automatic fire alarm at a building approximately one-half mile from the fire
station, and the overwhelming majority of automatic fire alarms are false
alarms or do not require the immediate presence of a firefighter;  

$                  
Green has
suffered from keratoconus, a progressive eye disease, since at least 1995;

$                  
Approximately
ten months before the collision, Green reported to his doctor that he
experienced decreased distance vision and blurring, and he refused a special
contact lens prescription due to his job as a firefighter;                                                     

$                  
On December 9,
2002, Green reported to his eye specialist changes in his visual acuity; he had
blurring of his vision and experienced difficulty watching television;








$                  
At the time of the accident, Green
was driving the fire truck in violation of a restriction on his driver=s license that required him to wear corrective lenses
while driving;

$                  
Other
firefighters were available to drive the fire truck;

$                  
When Green
entered the intersection of Fairmont Parkway and Jana, it was evening rush hour
on the Friday beginning Labor Day weekend;

$                  
Green had
actual knowledge that traffic would be heavy at this intersection;

$                  
The speed limit
on Fairmont Parkway was 45 miles per hour;

$                  
When Green
entered the intersection, the traffic light facing him was red;

$                  
The traffic
light facing westbound Fairmont Parkway was green;

$                  
The fire truck
weighed 39,500 pounds;

$                  
Trucks in the
southernmost and middle lanes of westbound Fairmont Parkway impaired Green=s view of the northernmost lane of
traffic; 

$                  
Green did not see the northernmost
lane of westbound Fairmont Parkway;

$                  
Green
would have been delayed by 15B30 seconds by stopping or slowing as
necessary to ascertain that all traffic had yielded.

As to Green=s conduct,
reasonable and fair-minded people could find, based on the trial evidence,
that, while not wearing corrective lenses required by his driver=s license, Green
drove the fire truck into the northernmost lane of westbound Fairmont Parkway
at 23 miles per hour and did not use the fire truck=s horn or siren.  








Green did not
introduce evidence that applied the legal standard for good faith to the above
circumstances and the above conduct.  Under the applicable legal standard, the
record contains no trial evidence that a reasonably prudent official, under
circumstances similar to or the same as those stated above, could have believed
that engaging in the above-described conduct was justified based on the
information Green possessed when he entered the intersection.  Therefore, the
burden never shifted to the Alfords to present evidence that no reasonable
person in Green=s position could have believed that the
facts justified his conduct (hereinafter AClaimant=s Burden@).[9] 
Accordingly, this court need not address our dissenting colleague=s contention that
expert testimony would be necessary for the Alfords to satisfy this burden. 
Under the applicable standard of review, the evidence presented at trial would
enable reasonable and fair-minded people to find that Green did not prove that
he acted in good faith.[10]


The cases upon
which Green relies are not on point.[11] 
Green=s argument that
this court should disregard circumstances or conduct that otherwise would be
relevant to the good faith inquiry unless they proximately caused the collision
contradicts authority from the Supreme Court of Texas and from this court.[12] 
For this reason, the trial court did not err in denying Green=s motion for
judgment as a matter of law, and Green=s first issue is
properly overruled.








Though the
majority acknowledges that this court need not address our dissenting colleague=s conclusion that
expert testimony would be necessary for the Alfords to satisfy the Claimant=s Burden, in an
obiter dictum, the majority nevertheless concludes that the testimony of Green=s expert, Chief
Gardner, satisfies the Claimant=s Burden.[13] 
As our dissenting colleague points out, Chief Gardner did not testify that no
reasonable person in Green=s position could have believed that the
facts justified his conduct.[14] 
This court need not address whether expert testimony would be necessary for the
Alfords to satisfy this burden for another reason.  Under the applicable legal
standard, the record contains no trial evidence that a reasonably prudent
official, under circumstances similar to or the same as those stated above,
could have believed that engaging in the above-described conduct was justified
based on the information Green possessed when he entered the intersection.[15] 
Therefore, the Alfords were not required to satisfy the Claimant=s Burden in the
trial court, and any failure to do so is not grounds for reversal on appeal. 
For this reason, it is unnecessary for this court to address whether expert
testimony is required to satisfy the Claimant=s Burden or
whether Chief Gardner=s expert testimony is sufficient to do
so.    








                                                      Conclusion

It is proper for the en banc court to grant the Alfords= motion for
rehearing, to vacate the panel opinion, and to affirm the trial court=s judgment.[16]


 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered and Majority,
Concurring, and Dissenting Opinions on En Banc Rehearing filed July 15, 2008.

 

En Banc Court consists of Chief
Justice Hedges, Justices Yates, Anderson, Fowler, Frost, Seymore, Guzman,
Brown, and Boyce, and Senior Justice Hudson.* 
(Guzman, J., majority) (Hudson, S.J., dissenting).

 









[1]  See Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 423B24 (Tex. 2004). 





[2]  883 S.W.2d 650, 656 (Tex. 1994).





[3]  See Ballantyne, 144 S.W.3d at 426.





[4]  See Wadewitz v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997); Chambers, 883
S.W.2d at 656. 





[5]  See Wadewitz,
951 S.W.2d at 467. 





[6]  See id. 





[7]  The majority states that this court should look at Athe circumstances concerning risk and need as the
evidence indicates [the official] perceived them.@  See ante at p.19.  This statement indicates that evidence is
relevant only if it shows what the official subjectively perceived.  However,
under Texas law, courts apply an objective standard and presume that Green
perceived the surrounding circumstances found by the trier of fact to exist.  See
Harris County v. Smyly, 130 S.W.3d 330, 334 (Tex. App.CHouston [14th Dist.] 2004, no pet.); City of
Houston v. Davis, 57 S.W.3d 4, 7 (Tex. App.CHouston [14th Dist.] 2001, no pet.). 





[8]  See Smyly, 130 S.W.3d at 334; Davis,
57 S.W.3d at 7.  The majority states that the evidence must prove good faith
under the above legal standard Abased on the
facts and reasonable inferences favoring the claimants.@ See ante at p.15.  However, there may be some
facts and reasonable inferences favoring the claimants that do not pertain to
the official=s conduct and the circumstances under which the
official engaged in that conduct.  Therefore, it would be more accurate to state
that there must be evidence that proves good faith under the above legal
standard based on the circumstances and the official=s conduct shown by the legally sufficient evidence
favorable to the claimant.





[9]  See University of Houston v. Clark, 38 S.W.3d 578, 581 (Tex. 2000).





[10]  See Clark, 38 S.W.3d at 587B88 (concluding that evidence did not conclusively
prove that public official acted in good faith because there was no evidence
addressing whether there were available alternatives to the course of action
chosen by the official); Wadewitz, 951 S.W.2d at 467 (concluding that
evidence did not conclusively prove that public official acted in good faith
because there was no evidence addressing the Arisk@ aspect of good faith); Smyly, 130 S.W.3d at
335 (concluding that evidence did not conclusively prove that public official
acted in good faith because there was no evidence applying the good-faith legal
standard to the circumstances shown by the evidence favorable to the claimant);
Davis, 57 S.W.3d at 7 (same as Smyly).





[11]  See City of San Angelo Fire Department v. Hudson,
179 S.W.3d 695, 703B07 (Tex. App.CAustin
2005, no pet.)  (involving evidence in which there was no conflict as to the
circumstances and which reflected a high risk from a burning building in which
there were adults and children); Johnson v. Campbell, 142 S.W.3d 592, 594B96 (Tex. App.CTexarkana 2004, pet. denied) (involving evidence in
which there was no conflict as to the circumstances and which reflected a need
for an immediate response based on a report of a threat that a woman might be
shot); Rivas v.
City of Houston, 17 S.W.3d 23, 26B29 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (applying legal standard for good faith significantly different from
the standard under Texas law because the jury was charged on that different
standard without objection).





[12]  See Wadewitz,
951 S.W.2d at 467; Chambers, 883 S.W.2d at 656; Smyly, 130 S.W.3d
at 335; Davis, 57 S.W.3d at 7. 





[13]  See ante
at p.20, p.21, n.18. 





[14]  See post at p.7. 





[15]  See Clark,
38 S.W.3d at 581. 





[16]  As noted in the majority opinion, the trial evidence
is legally and factually sufficient to support the challenged findings
regarding recklessness.  In addition, Green failed to establish, as a matter of
law, that he is covered by liability insurance for an amount not exceeding $100,000
as required by section 108.002(a)(2)(C) of the Texas Civil Practice and
Remedies Code.  Therefore, the second and third issues also lack merit.  





* 
Senior Justice J. Harvey Hudson sitting by assignment.