**Reversed and Rendered; and Opinion Filed January 16, 2014**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00705-CV**

**CITY OF DALLAS, Appellant**

**V.**

**BRIAN LONCAR, SUE LONCAR, ET AL., Appellees**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-09-06753-C**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Bridges

The City of Dallas appeals the trial court's order denying in part the City's plea to the jurisdiction. In three issues, the City argues the trial court erred in denying its plea to the jurisdiction because the City is immune from suit and immunity has not been waived. The City further complains the trial court should not have considered certain affidavits. We reverse the trial court's order to the extent the order denied the City's plea to the jurisdiction and render judgment that appellees take nothing on their claims.

Between 6:30 and 7:00 p.m. on May 15, 2008, Paul Ferguson was dispatched through 911 to a reported automatic fire alarm call at a Lowe's Home Improvement store on Lemmon Avenue. Ferguson, driving a fire engine, left the fire station and headed west on Lemmon Avenue. Ferguson had the engine's emergency lights and siren activated, and the roadway was dry. It was daylight, and rush hour had just ended. Ferguson activated his air horn intermittently

as he drove, activating it liberally at each intersection on Lemmon Avenue. He also kept his foot over the brake at each intersection. Two blocks before the intersection at Lemmon Avenue and Lomo Alto Drive, Ferguson activated the air horn at Herschel Street, approximately 400 feet from the intersection of Lemmon and Lomo Alto.

As he approached the intersection of Lemmon and Lomo Alto, Ferguson slowed down and looked for any oncoming traffic. All three westbound lanes on Lemmon were filled with vehicles, but there were no vehicles in the left turn lane to the southbound Dallas North Tollway entrance. When Ferguson first approached the intersection, he saw two vehicles in the three southbound lanes of Lomo Alto. One vehicle was stopped on Lomo Alto in the left turn lane for travel eastbound onto Lemmon, yielding the right-of-way to Ferguson. A second vehicle was stopped in the right turn only lane for travel onto westbound Lemmon, also yielding the right-of way. Ferguson believed the vehicles were all stopped to allow the fire engine to pass through the intersection.

Because the three westbound lanes of Lemmon were blocked, the only alternate route to continue westbound on Lemmon was the left turn lane for the southbound Dallas North Tollway entrance. Ferguson continued to slow down and again looked around for oncoming vehicles before entering the intersection of Lemmon and Lomo Alto. Ferguson "stayed on the air horn" as he passed through the intersection. Ferguson saw a car driven by Brian Loncar in the center lane of southbound Lomo Alto about a half block from the intersection. The center lane of southbound Lomo Alto is a straight-through lane only, and Ferguson believed the car would not come straight through the intersection because the southbound North Dallas Tollway entrance ramp was closed and blocked with barrels due to construction. Ferguson believed the car would hear the emergency siren and horn, see the emergency lights, and stop and yield the right-of-way like the other two vehicles traveling south on Lomo Alto had done.

As Ferguson entered the left-turn only lane, he continued to slow down and looked for oncoming traffic. Just before Ferguson entered the intersection, William Walters, a firefighter riding in the engine's front passenger seat, told Ferguson it was "all clear right." In a subsequent affidavit, Walters stated that "all clear right" is commonly understood by drivers and acting officers within the Dallas Fire-Rescue Department to mean the traffic to the right is clear or is yielding the right-of-way to an emergency vehicle.

Ferguson had his foot covering the brake as he entered the intersection, and he was traveling "at or just under the speed limit" of thirty-five miles per hour. As the engine crossed the middle of the intersection, it collided with a car driven by Brian Loncar. The Texas Peace Officer's Crash Report filed following the accident indicated that Loncar "entered the intersection with a yellow light into the path of" Ferguson's engine. A witness stopped at the intersection indicated Loncar "was accelerating into the intersection" and, in the witness's opinion, Loncar was trying to "beat" the yellow light. Another witness stated Loncar "did not yield" to Ferguson's engine. Loncar subsequently sued the City, asserting negligence claims. The City filed a plea to the jurisdiction arguing it retained immunity from suit for Loncar's claims. The trial court granted in part and denied in part the City's plea to the jurisdiction, and this appeal followed.

In its first issue, the City argues the trial court erred in denying its plea to the jurisdiction. Specifically, the City argues it is immune from suit as a result of Ferguson's official immunity.

Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are

questions of law. *Id.* at 226. Therefore, we review de novo a trial court's ruling on a jurisdictional plea. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact issue regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact issue on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

This standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. *Id.* After the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, the plaintiffs are required, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradiction, and could have been readily controverted. TEX. R. CIV. P. 166a(c); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 698 (Tex. App.—Austin 2005, no pet.).

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Miranda*, 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

Official immunity is an affirmative defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex. 1997). A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Id.* at 466. Loncar does not dispute that Ferguson was performing a discretionary duty and acting within the scope of his employment. Thus, as Loncar concedes in his brief, the only question in this appeal is "whether the City conclusively established that Ferguson acted in good faith."

A court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the employee's subjective state of mind. *Id.* Good faith depends on how a reasonably prudent officer could have assessed the need to which

an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Id.* at 467 (applying *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994), good faith balancing test in context of emergency response case). The "need" aspect of the test refers to the urgency of the circumstances requiring official intervention. *Id.* In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident could prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *Id.*

Here, Ferguson's affidavit stated he understood that, in making discretionary decisions during emergency response calls, he must weigh the need to urgently respond to a potentially life threatening fire against the risk involved to the general public when responding to the emergency. Based on his thirty years as a driver engineer for the Dallas Fire-Rescue Department, Ferguson understood that the activation of an automatic fire alarm is indicative of the presence of a fire. Although automatic fire alarms can frequently turn out to be false alarms, emergency responders who are enroute to an emergency call have no way of knowing when an alarm will be false. Therefore, as an emergency responder, Ferguson has a duty to treat each emergency call with urgency. Ferguson considered the fact that Lowe's Home Improvement is a large commercial structure, it could be a highly flammable structure with a high number of potential victims, and the call needed to be responded to immediately because persons and

property could be in imminent danger and the immediate presence of Ferguson's fire equipment and fire personnel was necessary to prevent serious injury to potential victims.

Ferguson's affidavit stated that, when he increased his speed over the limit on Lemmon, he believed in good faith that the need to get to the potential fire outweighed the perceived minimal risk of an accident. Ferguson recognized there was some risk when a driver of a fire engine makes a decision to increase his speed while responding to a Code 3 call. However, given that Lemmon is a relatively straight road, the dry condition of the road at the time, and the vehicles Ferguson saw that were traveling on the roadway but had stopped to yield the right-of-way to Ferguson's emergency vehicle, Ferguson did not perceive that increasing his speed on Lemmon or traveling through the intersection of Lomo Alto and Lemmon at or just under the speed limit would cause any danger to any other driver close to his location. Ferguson assessed the need to get to the potential fire quickly against the risk of accident by entering the intersection and in good faith determined that his emergency lights were clearly visible, his siren was clearly audible, and the vehicles in the intersection were properly yielding the right-of-way to his emergency vehicle.

Ferguson's affidavit stated that, taking into account all of the above factors, the potential danger posed by increasing his speed above the 35-mile-per-hour speed limit or traveling through the intersection of Lomo Alto and Lemmon at or just under the speed limit, was far less than the danger posed by the potential fire and potential loss of life. Given that Ferguson's engine was the closest available firefighting equipment to Lowe's at that time, he had been dispatched through the 911 system, and he was expected to respond urgently to provide firefighting services, Ferguson stated he had no other reasonable alternative but to proceed to the location in the manner in which he proceeded.

In his brief, Loncar argues Ferguson's testimony is "riddled with inconsistencies." Specifically, Loncar cites Ferguson's testimony that he was slowing the engine as he entered the intersection and that his foot was on the brake as he entered the intersection. Loncar then cites arguably contradictory evidence from the "black box" in Ferguson's engine that Ferguson "accelerated from the middle of the left turn lane as he entered the intersection . . . the brake was never engaged" and "the throttle was at 100%." Loncar argues these inconsistencies alone are enough for a fact finder to question the veracity of Ferguson's testimony. In addition, Loncar cites Ferguson's affidavit for the proposition that "Ferguson testified that he saw Loncar approaching the intersection and knew that Loncar had a clear lane of travel and an unobstructed line of sight." Loncar argues Ferguson's act in proceeding through the intersection was particularly dangerous given that "Ferguson admits he saw Loncar approaching the intersection in the center lane of Lomo Alto and knew that the center lane was open for travel into the intersection."

On the contrary, Ferguson's affidavit indicates he slowed down as he approached the intersection. Then, after assessing the need to get to the fire quickly against the risk of accident, he concluded that the danger posed by increasing his speed above the thirty-five mile per hour speed limit or traveling through the intersection of Loma Alto and Lemmon at or just under the speed limit was far less than the danger posed by the potential fire and potential loss of life. Further, Ferguson's affidavit states he had his "foot covering the brake" as he entered the intersection, presumably so that he could press the brake pedal more quickly if he needed to. Ferguson does not state he was pressing the brake with his foot, only that his foot was covering the brake. Thus, the statements in Ferguson's affidavit are not inconsistent with evidence from the "black box" that Ferguson accelerated into the intersection and did not apply his brakes. Finally, Ferguson states in his affidavit that he saw Loncar's vehicle approaching the intersection

but believed Loncar would hear the emergency siren and horn and see the emergency lights and would stop and yield the right-of-way to Ferguson's engine as the other two vehicles traveling south on Lomo Alto had done.

Citing *City of Dallas v. Brooks*, 349 S.W.3d 219, 228 (Tex. App.—Dallas 2011, no pet.), Loncar argues "any reasonably prudent fire fighter would have recognized the risk of harm created by this conduct." However, Loncar's argument imprecisely frames the issue. *Brooks* holds that a plaintiff must do more than show that a reasonably prudent officer could have stopped the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993)). Additionally, as noted in *Brooks*, the supreme court's opinion in *Chambers*, which involved a high-speed police pursuit, described the good faith test as setting "an elevated standard of proof for the nonmovant seeking to defeat a claim of official immunity in response to a motion for summary judgment, while reasonably accommodating the competing interests involved." *Id.* (quoting *Chambers*, 883 S.W.2d at 656).

The legislature has placed a higher burden upon civilian drivers than upon emergency-vehicle drivers; this burden is justified because emergency vehicle operators face more exigent circumstances than civilian drivers and because civilian drivers have the advantage of being able to prevent collisions with emergency vehicles due to the emergency vehicles' use of sirens and lights and due to the conspicuous coloring of emergency vehicles. *Hudson*, 179 S.W.3d at 699-700. Emergency responders are entitled to presume other drivers will respect emergency priorities. *Id.*

Loncar argues the affidavits of Ferguson and Walters, standing alone, "cannot conclusively establish what a reasonably prudent officer might believe." On the contrary, the

court in *Wadewitz* noted that Wadewitz relied chiefly on his own affidavit and the affidavit of an expert witness to establish good faith. *See Wadewitz*, 951 S.W.2d at 466. The court emphasized that an expert's testimony will support summary judgment only if it is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Id.* (quoting Tex. R. Civ. P. 166a(c)). The court determined the evidence did not conclusively establish Wadewitz acted in good faith because the evidence did not take into account both sides of the *Chambers* balancing test and did not, therefore, establish that either Wadewitz or his expert "had a suitable basis for concluding that a reasonable officer in Wadewitz's position could or could not have believed that Wadewitz's actions were justified." *Id.* at 467.

The record shows the need to which Ferguson was responding was a potentially life threatening fire at Lowe's Home Improvement. Ferguson's engine was the closest available firefighting equipment to Lowe's, and its immediate presence was necessary to prevent injury or loss of life in the fire. Ferguson drove in the left-turn-only lane because it was the only option available allowing him to continue westbound on Lemmon in response to the emergency call. On the other hand, the risks involved were that Ferguson's engine would collide with another vehicle or vehicles, resulting in serious injuries or death. However, the road was dry, rush hour had ended, and Ferguson was operating his emergency siren, horn, and lights. Although Ferguson saw Loncar traveling on Lomo Alto, the other cars on Lomo Alto had stopped and yielded the right-of-way to Ferguson. We conclude this evidence conclusively established Ferguson acted in good faith. *See Wadewitz*, 951 S.W.2d at 465-67. Accordingly, the trial court erred to the extent it denied the City's plea to the jurisdiction. We sustain the City's first issue. Because of our disposition of the City's first issue, we need not address the City's remaining issues.

We reverse the trial court's judgment to the extent it denied the City's plea to the jurisdiction and dismiss those claims for want of jurisdiction. In all other respects, the trial court's judgment is affirmed.


120705F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-12-00705-CV     V.

BRIAN LONCAR AND SUE LONCAR, ET
AL., Appellees

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-09-06753-C.
Opinion delivered by Justice Bridges.
Justices Moseley and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:
> appellees Brian Loncar, Sue Loncar, individually and as next friends of Hailey Loncar, Abby Loncar, and Grace Loncar and Intervenors Raquel Luna, individually and as next friend of Victor Luna, Erika Luna, and Miguel Luna take nothing on their claims..

It is **ORDERED** that appellant CITY OF DALLAS recover its costs of this appeal from appellees BRIAN LONCAR, SUE LONCAR, INDIVIDUALLY AND AS NEXT FRIENDS OF HAILEY LONCAR, ABBY LONCAR, AND GRACE LONCAR AND INTERVENOR RAQUEL LUNA, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR LUNA, ERIKA LUNA, AND MIGUEL LUNA.

Judgment entered January 16, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE